NEW-YORK,
May, 1810.

JACKSON
v.
JANSEN.
</div>

———◄◄●►►———

JACKSON, ex dem. ELLSWORTH, against JANSEN.

THIS was an action of ejectment, for a house and lot in *Kingston*. A verdict was taken for the plaintiff, subject to the opinion of the court, on the following case.

*William Ellsworth*, the father of the plaintiff, was seised in fee of the premises in possession of the defendant, and died seised, on the 20th *October*, 1799, leaving the lessor, his only child, and heir at law. It appeared, that *William Ellsworth*, in his life-time, on the 15th *July*, 1796, made a will, which was duly executed, and which remained unrevoked at his death.

The will contained the following clauses : " I do hereby authorize and empower my executors, hereinafter named, to sell and dispose of all and singular my house and lot of ground on which I now live, and the barn and lot opposite to my said dwelling-house, to the best advantage, and to make, seal and execute deeds of con-

<div align="right">

A. by his last will and testament, after directing his executors to sell his personal estate, authorizes and empowers his executors therein after named to sell and dispose of his real estate; and directs them, after they have disposed of his estate, and converted the same into money, to place the same at interest, on good security, and to pay the interest annually to his wife; and " at and after his wife's decease, he gives and bequeaths to his son, an only child, all the principal
</div>

sums of money and security in the hands of his executors." He then named his wife, and two others, as executors. One of the executors renounced ; and, after the death of the widow, the surviving executor sold the real estate. It was held, that the object of the testator, in creating the power, being to make a provision for his wife, it ceased, at her death, and the lands descended to the heir at law.

veyance to the purchaser or purchasers of the same in fee-simple. I also hereby authorize and empower my said executors, to sell and dispose of all my personal estate, except what I have herein before given and bequeathed, and otherwise directed. It is my will, after my said executors shall have so disposed of my said estate, and converted the same into money, that they let out the whole thereof on use or interest, on good security; and that the interest moneys be annually paid by my said executors, to my said wife, during her natural lifetime. And it is my will, and at and after my wife's decease, I give and bequeath unto my son, *Theophilus Ellsworth*, his heirs and assigns, all the principal money, in bonds and other securities, which shall be remaining in the hands of my executors. And lastly, I do nominate my wife, *Elizabeth*, executrix, and my trusty friends, *Abraham Low* and *Christopher Tappen*, executors," &c.

The will was proved in 1799, and *Christopher Tappen* and *Elizabeth Ellsworth*, two of the executors named, acted as executors; *Abraham Low*, the other executor, having renounced. *C. Tappen*, after the death of the executrix, *Elizabeth*, who died in *January*, 1804, as surviving executor, sold the premises, on the 7th *August*, 1804, to the defendant, who is his son-in-law. Previous to the sale, *C. Tappen* had leased the premises, and received the rent. The sale was private, and not by auction. Neither the rents, nor a sum of 100*l.* bequeathed to the widow, were paid to her; and *C. Tappen* is insolvent, and has paid no part of the purchase-money to the plaintiff.

Two points were stated by the counsel for the plaintiff: 1. That *Tappen*, the surviving executor, had no power to sell; the power given to the executors, by the will, being a mere *naked* power.

2. Whether the power given to the executors was coupled with an interest or not, it ceased with the death of the widow of the testator.

*Sudam,* for the plaintiff. 1. There are three propositions, which I take to be settled law; 1. That where there is a bare authority given to the executor to sell, the fee rests in the heir at law, until the sale.* 2. A power given to executors to sell, must be strictly pursued, and they must all join in the conveyance; and if one of them dies, the power ceases at common law.† 3. When the subject on which a power is to operate ceases, the power also ceases.

* *Powell on Devises,* 293. *Co. Litt.* 113. a.

† *Powell on Devises,* 294, 295.

A case in point is stated in *Dyer.*‡ Before the statute of 27 *Hen.* VIII. a *cestuy que use* in fee devised by his testament, that A. B. and C. his feoffees, should suffer his wife to take the profits of his land during her life, and after her decease, that the premises should be sold by the said feoffees, and the money to be received thereon to be paid to certain persons. The testator, and A. one of the feoffees, and the wife, died; and it was held, that B. and C. the surviving feoffees, could not sell.

‡ *Dyer,* 177. a. pl. 32.

So where a man devised, that after the death of his wife his land should be sold by his executors, with the assent of A. B. and made his wife and I. S. executors, and A. B. and the wife died, it was held, that the surviving executor had no power to sell.§

§ *Dyer,* 129. a. pl. 8.

In the case of *Lee* v. *Vincent,*¶ and in *Townsend* v. *Wale,*** and in other cases, where the sale by survivors was held good, the persons who were to sell were either not named, or had a power coupled with an interest; and where there are no express words designating who are to sell, the law gives the power to those who are to distribute the money.††

¶ *Gro. Eliz.* 26. *Dyer,* 176. S. C.
** *Cro. Eliz.* 524.

All the cases on this subject are collected by *Powell,*‡‡ and the distinction is taken between a mere naked

†† 2 *Leon.* 220. *Dyer,* 371.
‡‡ *Powell on Devises,* 301, 302.

NEW-YORK,
May, 1810.

JACKSON
v.
JANSEN.

power, and a power coupled with an interest; and it will be found, that in all those cases the court went on the ground, that as there was an estate for life, or for years, created, before the sale was to take place, either for the payment of debts, or for the maintenance of younger children, it amounted to a devise for life or for years; showing clearly the intention of the testator, that those who survived should convey, by giving the executors a trust, to be performed before the sale.

The doctrine for which I contend is fully recognised, and clearly stated, by the chief justice, in giving his opinion in the court of errors, in the case of *Bergen and others* v. *Bennett.** "If," says he, "a man, by his will, directs his executors to sell his land, this is but a bare authority, without interest; for the land, in the mean time, descends to the heir at law, who, until the sale, would, at common law, be entitled to the profits; and, being but a naked authority, if one executor dies, the power at common law would not survive."

*margin: * 1 Caines's Cas. in Error, 16.*

It may be laid down as a rule, that where an heir at law has a right of entry until a sale, the power to sell is a naked authority.

It is true, that Mr. *Hargrave,*† in commenting on the doctrine laid down by Lord *Coke,* that a power given to executors to sell land, is a naked authority; considers, that there is no distinction between *a devise of lands to be sold by executors,* and *a devise that the executors shall sell the lands;* and that such a distinction is an overstrained refinement; but he admits that it has been adopted since the time of Lord *Coke,* though he cites some authorities the other way.‡ The cases, however, which he cites, do not bear out his position. In the case of *Howell* v. *Barnes,* there was a devise to the wife for life, with directions to his executors to sell, after the death of the wife, and one of the executors died in the life-time of the wife; it was held, that the devise

*margin: † Co. Litt. 113. a. (N. 2.)*

*margin: ‡ Cro. Car. 382. W. Jones, 352. Bro. Abr. Dev. 50.*

gave a naked power, and that the surviving executor might sell, though not before the death of the wife.

The same case is stated by Sir *William Jones* to have been a devise to the executors, after the death of the wife, for the payment of debts and legacies, and the reason given why the surviving executors might sell, is, that the executors were to sell *virtute officii,* and to apply the proceeds, *officially,* to the payment of the debts.

In the case in *Brooke's Abr.* (352.) there was a devise of the lands to executors to sell, and the court decided on the ground that the interest in the land passed to the executors.

It is evident, that Mr. *Hargrave* has treated the subject of powers lightly ; considering the doctrines which have been noticed as of little importance, as such powers, though *extinct* at law, would be enforced in a court of *equity,* which will always relieve against defective powers, and not permit a trust to fail for want of a trustee.

The statute concerning wills (24 sess. c. 9. s. 11.) recognises the distinction between lands devised to executors to be sold, and a devise ordering them to sell the lands, and provides, that if part of the executors refuse to act, the others who take charge of the will may sell.

In *Lancaster* v. *Thornton,** the testator, after charging his real estate with the payment of debts, devised his *leasehold* estate to his two sons and daughter, on trust, to pay debts, legacies, &c. and in case the leasehold estate should not be sufficient for those purposes, he devised, " That his said two sons and daughter shall and may absolutely sell, mortgage, or otherwise dispose of his *freehold* estate, for the payment of debts," &c.

* 2 *Burr.* 1927.

*Ashhurst, arguendo,* admitted the general doctrine, that where the devise was, that the executors should sell, &c. the legal estate did not pass. The counsel for

the heir at law contended, that the executors had a bare power to sell. Lord *Mansfield* said it was a clear case, that the word *devise*, was no more than saying " I will," or, " my mind is," &c. that the executors had only a bare authority to sell.

2. But the words of the will show most clearly that it was the intention of the testator, that the lands should be sold during the life-time of his wife, and not afterwards. If, therefore, there is a power, coupled with an interest, it is limited to the life-time of the widow, and expired at her death.

The insolvency of *Tappen* affords an additional reason for holding executors, in cases of this kind, strictly to their authority; for if the heir at law cannot recover, he is remediless.

The defendant here is to be considered as a purchaser with full notice.*

\* 2 *Fonb. Equ.* 152. b. 2. c. 6. s. 2. 4 *Term Rep.* 39.

*Hawkins*, contra. 1. The 11th section of the statute relative to wills,† (*Laws*, vol. 1. p. 180.) is remedial, and ought to be liberally construed. It was evidently the intention of the legislature to enable an executor, who has a mere naked power to sell, to execute that power. Where the word executors is used as a mere description of persons, without reference to the office, or the duties to be performed, it is confined to males ; and it seems to have been the intention of the testator to exclude the wife from a participation of this trust. The other executor having refused to act, the case comes within the provision of the statute.

† 24 sess. c. 9.

The observation of the chief justice, in the case of *Bergen* v. *Bennett*, is by way of illustration, and collateral to the point then before the court. It is, therefore, to be regarded as an *obiter dictum*.

When there are several executors, they are all considered, in law, as one person ;‡ and the acts of one,

‡ *Office of Ex.* 95 *Toller's Law of Ex.* 37.

in relation to the trust, are considered as the acts of all. Where the trust is joint, and reposed *virtute officii*, it survives.

NEW-YORK, May, 1810.

JACKSON v. JANSEN.

The case of *Howell* v. *Barnes** was decided after the publication of *Coke's Commentary on Littleton*. It was a naked power to sell; and yet three of the judges of K. B. held, that the surviving executor could sell.

* *Cro. Car.* 382. *W. Jones,* 352.

The true distinction is laid down in *Jenkins.*† (*Centuries*, 44.) " If a man devises, that A. and B. shall sell his land, and makes them his executors, one cannot sell without the other, though the other refuses to act, or dies; otherwise, if the devise be that his executors shall sell, and he afterwards name A. and B. to be his executors, near the end of his will, and one of them dies; for the naming of them, by their proper names, in the first part of the will, annexes to the sale a trust in A. and B. and appropriates the trust to them as private persons. It seems to me, that if the devise be, that A. and B. his executors, shall sell certain lands, and near the end of the will he also names them executors; if the one refuses at common law, or dies, the other may sell; for the interest is annexed to the executorship, by the repetition in the will."

† 1 *Jenk. Cent.* case 83.

This distinction is recognised by *Powell*, in commenting on the case of *Howell* v. *Barnes*;‡ and *Sugden*, in his *Essay on Powers*,§ lays down the rule, that where an authority to sell is given to executors, and the will does not expressly point to a joint exercise of it, a single surviving executor may execute it. The same distinction is also to be found in many other books;¶ and is a well settled rule in the court of chancery.**

‡ *Powell on Devises*, 307. See also *Littleton's Rep.* 96. *Wingate's Maxims*, 221.
§ *Sugden on Powers*, 140. 143.
¶ *Godbolt*, 77. *Cro. Eliz.* 80. *Hardres*, 419. *W. Jones's Rep.* 352. 4 *Term Rep.* 93.
** 3 *Atk. Rep.* 510. 2 *Atk.* 586.
†† 2 *Dallas*,223.

In *Lloyd* v. *Taylor*,†† decided in the supreme court of *Pennsylvania*, there was a devise, that certain lands should be sold, after the death of the testator's wife, and the money divided among the children; and they were sold by a surviving executor, and the court thought

NEW-YORK,
May, 1810.

JACKSON
v.
JANSEN.

\* *Hard.* 419. *W. Jones's Rep.*137. *Noy's Rep.* 80. *Latch's Rep.*11. 39. 135.

† *Toller's Law of Executors,* 144. *Co. Litt.* 236. a.

‡ 1 *Co.* 173. b. 2 *Atk.* 565. 2 *Term Rep.* 252. 1 *Johns. Cases,* 82.

§ *Latch,* 29. 2 *Atk.* 568.

¶ *Doug. Rep.* 574. 1 *Salk.*226. *Halt's Rep.* 232. 4 *East,* 419. \*\* 1 *Ch. Cases,* 10. *Powell on Powers,* 263.

†† 4 *Term Rep.* 93.

it a plain case. In reason and common sense, there is no distinction between a devise of land to executors, to be sold, and a devise that executors shall sell. In either case, the fee is in the trustees, for the purpose of executing the trust.\* A fee cannot be in abeyance; it must be either in the heirs, or in the executors. If it has descended to the heir and vested in him, it never can be devested by the trustees. It would be absurd to say, that the fee was in the heirs, and yet that the executors had power to sell it.

Whatever may have been the ancient notion on this subject, modern determinations have established the doctrine for which we contend.† The descent is broken by the power given to the executor, or trustee, and the vendee is in, and holds under the devisor, or the authority creating the power.‡

2. Then did the trust cease on the death of the widow? The testator expressly directs, that his real estate should be sold, and converted into personal property; and where the intention is clear and unambiguous, it must be carried into effect.§ No implication of law is to be admitted against the express words of a will; nor is the heir at law to be favoured, where there is no ambiguity, or room for implication.¶ And though a power is defectively executed, a court of chancery will aid a purchaser for a valuable consideration.\*\* A court of law will inquire into the authority to sell; and if that is sufficient, and the sale is made for a valuable consideration, it will not be avoided.

The heir, on the death of the widow, should have filed a bill in chancery, to restrain the executor from selling. Near eight months elapsed, from the time of her death to the time of the sale. Having slept on his rights, he ought now to be concluded by the sale.

In the case of *Doe* v. *Woodhouse,*†† where the real estate was not expressly given to the executors, yet as

they were required to do certain things which they could not do, without having the fee, it was construed to vest in them.

*Per Curiam.* It is unnecessary, at present, to take notice of the first point which was raised and argued in this case, because, if it were to be admitted, that a power to sell, unaccompanied with a devise of an interest in the land, will survive, the intent of the testator is here apparent, that the sale by his executors should be made in the life-time of his wife. The intent is much regarded in the construction of these powers; and from several of the cases it would seem, that the power was construed with greater or less latitude, as would best meet this intent. After giving the power to sell, the testator directs, that when his executors shall have so disposed of his estate, they shall put the moneys at interest, on good security, and pay the interest annually to his wife, who is also appointed one of the executors. The great object of the power was to make provision for the wife; and if it was not exerted in her life-time, the intention is plain, that it was not to be exerted at all. It was granted upon the condition, necessarily implied, that it should be exercised for her benefit.

On this ground, then, even if the other was not tenable, the plaintiff is entitled to recover.

Judgment for the plaintiff.