CHARLES W. SMYTH, Plaintiff in Error, *v.* JAMES TAYLOR, Defendant in Error.

ERROR TO GREEN.

Where the executor is authorized by a will, to sell both the real and personal property of the testator, "*at any time,*" that expression will be construed with reference to, and in connection with, the objects and purposes expressed in, and in subordination to, the trusts and powers created by the will.

The intention of the testator is not to be ascertained from any particular word used, but from all the provisions of a will; all its parts are to be construed in relation to each other.

The same rule applies in the construction of powers; and in ascertaining the intention of a party, the circumstances of the case may be used as auxiliaries.

Whenever it appears that the object for which a power has been created, has been accomplished, or has become impossible, or is unattainable, the power itself ceases.

THIS was an action of ejectment, to recover the undivided one-third of the east forty acres of the north-west quarter of section 23, in township 12 north, range 12 west 3rd P. M., in Green county.

Plaintiff claims the premises as one of the heirs of Francis G. Smyth, who died testate about the 19th day of April, 1839. Said Smyth, deceased, died, leaving a wife and three sons. By his will, the testator bequeathed to his wife certain personal property, consisting of stock and household furniture, and also all the crops maturing on the farm at the time of his death, and one hundred bushels of corn, to be hers so long as she should

remain his widow, but to pass to the executor on her marriage, who is directed to sell the same, and loan the proceeds out at the highest and best interest for the benefit of his children. Then follows the following provision, to wit:

"Third. I do order and direct, that all the residue of my property, both real and personal, shall be sold at any time, either on a credit or for cash in hand, or a part of the amount which the same may sell for, may be required by the executor to be paid in hand at the time of sale, and time given for the payment of the balance, as the executor may deem most advisable and proper. The real estate may be either sold at private or public sale, as the executor may see proper, and the money arising therefrom, one-fourth of the same shall be retained in the hands of my executor, and by him loaned at the highest and best interest possible, and the interest accruing thereon shall be by him *annually paid to the said Sinai,*" (his wife) " so long as she shall remain my widow, and no longer, so that if she should ever marry, she shall thereafter be deprived of any portion of my estate, except the interest she may have previously received according to the provisions of this will. The other three-fourths of the money shall be loaned at the highest and best interest, either by my executor, or by the person or persons who may be appointed guardians to my minor heirs, *until they shall arrive at full and lawful age,* and then one equal part of it, *together with the interest,* shall be paid to my eldest son, James O. Smyth, *when he arrives at the age of twenty-one years,* and one other equal part of the same, *with the interest* which may have accrued thereon, to my son, John W. Smyth, and one other and last equal part, *together with the interest which may have accrued thereon,* to my third son, Charles W. Smyth, *as they shall severally arrive at full and lawful age.*"

Will then provides that if the said Sinai should marry, the executor should pay over her share to his three children; and appoints John Holliday, executor.

The bill of exceptions further shows, that at the time of the death of the testator, the oldest child was about nine years old, the second about seven years old, and the youngest two and a half years old; also that the widow renounced the provisions of the will, took her dower, and married in the year 1843; also that the premises now in controversy were sold by the executor on the 6th day of June, 1853, and that at the time of sale, the two oldest sons had already become of age.

It is admitted, as the bill of exceptions shows, that if the executor did not have power to sell the premises on the 6th day of June, 1853, according to the provisions of the will, then the

plaintiff ought to recover in manner and form as set forth in the declaration.

The evidence also shows, that from the death of Francis G. Smyth, to the time of sale, the executor had possession and control of the premises.

The evidence also shows, that the plaintiff was supported and educated by his mother, and her present husband, up to the time of his majority, wholly at their expense.

The cause was tried by the court by consent, and judgment rendered for defendant, to which the plaintiff at the time excepted, etc.

The errors assigned, are : The court erred in rendering judgment for defendant; in overruling motion for new trial; and in not rendering judgment for the plaintiff.

KNAPP & CASE, for Plaintiff in Error.

J. M. PALMER, for Defendant in Error.

BREESE, J.  The question presented by the record in this case, arises out of the power of the executor, under the will of Francis Smyth, to sell his real estate.  The plaintiff claims one-third of such estate, as one of the three children of the testator, and as one of his heirs at law.  The defendant claims as purchaser, under a sale made by the executor on the sixth of June, 1853.  The testator died in April, 1839.

The appellant admits that the executor was, at one time, vested with the power to sell, but insists that the power had expired before he attempted to exercise it.  The first question that presents itself is, was there any time expressly limited by the will, within which the power to sell should be exercised?

By the terms of the will, the executor was authorized to sell both the real and personal property " at any time, either on a credit, or for cash in hand, or a part of the amount which the same may sell for, may be required by the executor to be paid in hand at the time of sale, and time given for the payment of the balance, as the executor may deem most advisable and proper."  What construction shall be put upon the words " at any time," and by what rule is the court to be governed in giving them a meaning ?

It is an universal rule in construing wills, that the intention of the testator must be the governing principle, and that must be collected upon grounds of a judicial nature, as distinguished from arbitrary, occasional conjecture.  2 Jarman on Wills, 523.

This intention is not to be ascertained from any particular word used, but is to be collected from all the words, and all the

provisions of the instrument.   All its parts are to be construed in relation to each other, so as, if possible, to form one consistent whole.   And the rule is the same in the construction of powers—the intention of the parties is to govern.   *Goodtitle* v. *Funucan*, Doug. R. 565; *Wilson* v. *Troup*, 7 Johns. Ch. 33; *Pomeroy* v. *Partington*, 3 T. R. 362.   As powers are to be carried into effect according to the intention of the party creating the power, in ascertaining what that intention is, the circumstances of the case may be used as an auxiliary.   7 Com. Dig., title "Poiar," 8.

Construing the expression "at any time," with reference to, and in connection with the objects and purposes expressed in the will, for the creation of the power to sell, we have no difficulty in arriving at the conclusion, that it operates as a limitation of time within which the power shall be exercised.

The purposes for which the power was created, are so clearly specified, as to forbid the idea that it was to endure for an indefinite period, and to be exercised for any purpose the executor might deem proper.   The testator certainly never meant to give him a power which should enable him to defeat all the provisions in his will in favor of his wife and children.   The general terms used—"at any time"—must be restricted, by construing them in subordination to the trusts and provisions in the will.   Now, what are those trusts and provisions?   After bequeathing to his wife certain personal property, enumerated specifically in the will, to be hers so long as she should remain his widow, but to pass to his executor on her marriage, he then orders and directs that all the residue of his property, both real and personal, shall be sold at any time, either on a credit or for cash in hand, etc. The real estate to be sold, either at private or public sale, as the executor might see proper, and the money arising therefrom, one-fourth of the same is to be retained in the hands of the executor, and by him loaned at the highest and best interest possible, and the interest accruing thereon to be annually paid to his wife, so long as she remains his widow and no longer, so that if she should ever marry, she is to be deprived of any part of the estate, except the previous provision of the will.

This is the only permanent provision for his wife to be found in the will.   He designs to provide for her annual support out of the interest accruing on one-fourth of the money arising from the sale of the land.   To carry this intent and design of the testator into effect,—to carry out the object in view in creating the power, it would seem, the executor should exercise it soon after the death of the testator.   How, otherwise, could this his intention be carried into effect?

The case shows, however, that the widow renounced the provision made for her under the will, taking the share of the estate allowed her by law—at what time is not stated—and that she married again in 1843. The executor not having sold, prior to her renunciation and marriage, could not sell to provide for her after those acts, as she herself defeated one of the objects the testator had in view by creating the power. But how stands the case with regard to the children ?

The provision in the will for their benefit, is found in the same clause in which the widow is included. It declares, " the other three-fourths of the money shall be loaned at the highest and best interest, either by my executor, or by the person or persons who may be appointed guardians to my minor heirs, until they shall arrive at full and lawful age, and then one equal part of it, together with the interest, shall be paid to my eldest son, James O. Smyth, when he arrives at the age of twenty-one years, and one other equal part of the same, with the interest which may have accrued thereon, to my son, John W. Smyth, and one other and last equal part, together with the interest which may have accrued thereon, to my third son Charles W. Smyth, as they shall severally arrive at full and lawful age," with a further provision, that should his wife marry, the executor should pay over her share to his three children.

At the time of making this will, James was about nine years of age, John about seven, and Charles, the plaintiff in this suit, two years and six months old.

The objects and purposes of the testator, as we gather from the will itself, were, that his real estate should be converted into money to constitute a fund, to be increased by a high rate of interest, which each of his children should enjoy on their severally arriving at the age of twenty-one.

At the time this provision was made, contracts for interest were authorized, at a rate not exceeding twelve and one-half per centum per annum, on the loan of money. Act of 18th February 1833, Laws of 1833, page 348. This act was not repealed until 3rd of March, 1845. R. S. 1845, p. 459. In practice, throughout the whole State, it is well known, double the above rate of interest was usually received. The testator, doubtless, regarding the tender years of his children, the improvidence of guardians, so general as to be a common remark, the waste and annual dilapidation of improved and rented lands, the taxes, and charges for repairs and other expenses, might well have supposed on their arrival at full age, they would have nothing but barren acres with which to begin their active lives, and but a small pittance for their support, and if wild land, nothing. Money, at a high rate of interest, such as was then paid for its use, and even now,

Smyth *v.* Taylor.

would be more beneficial. In looking into the intention of a testator, courts will regard the circumstances under which he acts,—as the state of his property, of his family, and the like, and the motives which can be reasonably supposed to influence men in their action, in such cases. Here, a strong desire is manifested by the testator, to provide, in the most beneficial manner, for his infant children, when they should reach their manhood, and ample power given to the executor to effectuate that desire.

The will expressly provides, that the money arising from the sale of the land, shall be loaned out at the highest rate of interest, " during the minority " of the children ; so that each child, on coming of age shall receive his equal share, with the accumulated interest; and this is to be done, not by the executor only, but by such person or persons as may be appointed guardians for the children ; clearly showing the strong desire the testator had, to convert his land at the earliest possible moment into money for the benefit of his children.

Though there be no express limitation of time within which this power to sell is to be exercised, yet it is strongly implied from the whole language, style and tenor of the will, that it should be exercised during the minority of the children, and at such time as would, by loaning the money arising from the sale at the highest rate of interest, produce the largest fund for each child as it arrived at full age. This was the only purpose of the testator, and the phrase, " at any time," is to be so construed and understood.

Again, the language of the will is, that " the residue of my property, both real and personal, be sold, etc." The power over the personal property is given in the same words, and found in the same sentence which creates the power to sell the real estate. It will not be pretended, the executor could retain the personal property for an indefinite period and then sell it, or for fourteen years after the death of the testator, and then sell it as he did the land. The plain purpose and object of the testator was the speedy creation of a fund, during the minority of his children, the benefits of which they should receive as they severally arrived at full age. This has been defeated by the conduct of the executor. He has not executed the power in accordance with the intention of the testator, so clearly manifested by him, nor within the time clearly limited by the will, as implied from its expressed purposes and objects.

It is a maxim, when the reason of a law ceases, the law also ceases ; so with powers, they necessarily expire when the objects of their creation fail, have become impossible or unattainable.

Now, in this case, before the exercise of the power by the executor in selling the land, the two oldest sons had reached their majority ; of course, the object of the testator, as to them, could not be reached by a sale. The time, when the intention of the testator could have been accomplished had passed, and with it, the power to sell, the one being dependent on the other.

The case of *Jackson ex dem. Ellsworth* v. *Jansen*, 6 Johns. 73, is a case very much like the one we are considering. William Ellsworth, the father of the plaintiff, was seized in fee of the premises, and died seized, leaving the lessor his only child and heir at law. He made a will, which was duly executed and unrevoked at the time of his death. The will contained these clauses : " I do hereby authorize and empower my executors hereinafter named, to sell and dispose of all and singular my house and lot of ground on which I now live, and the barn and lot opposite to my said dwelling-house, to the best advantage, and to make deeds, etc. I also hereby authorize and empower my said executors to sell and dispose of all my personal estate, etc. It is my will, after my said executors shall have so disposed of my said estate, and converted the same into money, that they let out the whole thereof on use or interest, on good security ; and that the interest moneys be annually paid by my said executors to my said wife, during her natural lifetime. And it is my will, and at and after my wife's decease, I give and bequeath unto my son, Theophilus Ellsworth, his heirs and assigns, all the principal money in bonds and other securities, which shall be remaining in the hands of my executors. And, lastly, I do nominate my wife Elizabeth, executrix, and my friends, Abraham Low and Christopher Tappen, executors, etc." The widow and Tappen acted as executors, the other having renounced. In January, 1804, Elizabeth, the executrix, died, and Tappen, as surviving executor, sold the premises in August, 1804, to the defendant, his son-in-law.

Several points were made on the trial, and the court say : It is unnecessary at present to take notice of the first point which was raised and argued in this case, because, if it were to be admitted that a power to sell, unaccompanied with a devise of an interest in the land, will survive, the intent of the testator is here apparent, that the sale by his executors should be made in the lifetime of his wife. The intent is much regarded in the construction of these powers ; and from several of the cases it would seem that the power was construed with greater or less latitude as would best meet this intent. After giving the power to sell, the testator directs, that when his executors shall have so disposed of his estate, they shall put the moneys at interest, on good security, and pay the interest annually to his wife,

who is also appointed one of the executors. The great object of the power was to make provision for the wife, and if it was not executed in her lifetime, the intention is plain, it was not to be executed at all. It was granted upon the condition necessarily implied, that it should be exercised for her benefit. On this ground, even if the other was not tenable, the plaintiff is entitled to recover.

A similar and stronger case is found in 3 Cowen R. 651, *Sharpsteen* v. *Tillon.* Moses Hallock made his will, by which he devised his house, etc., to his wife, and a comfortable maintenance, to be out of the income of his real estate, so long as she remained his widow; to his two sons, Edward and Isaac, the use and improvement of all his real estate, except their mother's maintenance, during her natural life; and directed that after her decease, all his real estate should be sold, and gave to his two sons, E. and I., £150 apiece, and to his five sons, all the rest of his estate, of all kinds, to be equally divided between them; and appointed L. and D., and his son I., executors for the purposes in the will mentioned. L. and D. alone proved the will, and took upon themselves its execution. The testator died, leaving a widow and his five sons, and the children of a deceased daughter. The widow having died, I. having also died without issue, and E. and another son having died, leaving issue, the two executors, L. and D., sold the real estate.

The court held that the objects of the testator having been in a great measure defeated, and his intentions in giving the power frustrated, the power itself failed; and the sale was consequently void, so far as it depended on the powers. And the court say, that the purposes of a testator, in giving a power by his will to sell real estate, must be ascertained from all the provisions of the will; and the objects of the power must be considered in connection with the power itself; and that a power in a will, to sell real estate, fails when its objects are unattainable.

We think it is both reasonable and right, that wherever it appears that the object for which a power has been created, has been accomplished, or has become impossible, or unattainable, that the power itself should cease to exist.

As we have seen what were the objects and purposes of this testator, by creating this power in his will, and that they were unattainable in 1853, when the executor sold, the sale was void. Two of the sons had reached full age. No fund was created for them, or for the plaintiff, rapidly reaching his majority, as the testator had provided, and his purposes, so clearly manifested in his will, could not be accomplished by a sale. The time had passed, and the power expired by its own limitation, as implied in the will.

This being a question of power, it will not satisfy the claim of the plaintiff, by remitting him to a recovery of his portion of the money for which the land was sold. He is · entitled to his share of the land, and such being the stipulation of the parties, if the sale by the executor is declared void, we will not remand the cause, but direct that judgment be entered here, for the equal undivided one-third part of the land, as set forth and described in the declaration, as the estate in fee of the plaintiff, and that a writ of possession issue therefor.

The judgment below is reversed.

*Judgment reversed.*