BROOKLYN TRUST COMPANY, as Executor, etc., of FRANK H. LESTER, Deceased, Respondent, v. FLORENCE M. LESTER, Individually and as Surviving Trustee under an Agreement Made between FRANK H. LESTER and FLORENCE L. LESTER, Dated August 30, 1917, and Others, Defendants, Impleaded with FLORENCE L. LESTER, Appellant.

Second Department, November 27, 1933.

*Otis T. Bradley* [*Francis W. Phillips* with him on the brief], for the appellant.

*Lyman Sessen*, for the respondent.

DAVIS, J. The plaintiff, as executor and trustee, has a declaratory judgment determining certain legal rights of the parties. Florence L. Lester, the widow of the testator, has appealed.

Prior to August 30, 1917, Frank H. Lester was in the fruit business, and it appears that he was in some financial difficulties. He had conveyed certain property to the nominees of the Irving National Bank as collateral security for a loan. These conveyances included the home at 38 Linden avenue and premises situated on Greene avenue, in Brooklyn. His wife, Florence L. Lester, did not join in these conveyances, thereby leaving outstanding her inchoate right of dower. The husband, wife and two of the children (Charles B. Lester and Florence M. Lester), on August 30, 1917, entered into a somewhat complicated agreement having for its apparent purpose an adjustment of the involved financial affairs of the parties and the settlement of their future relations.

In this agreement the two children, Charles B. and Florence M. Lester, were appointed trustees. It was provided, in brief, that the wife should release her inchoate right of dower in two parcels of property on Fourth avenue in Brooklyn to the nominee of the bank. The nominee, in return, was to reconvey to the trustees the property occupied by the Lester family as a home at 38 Linden avenue. This property was subject to a mortgage then under foreclosure. The trustees were to give a new mortgage for the purpose of liquidating the old mortgage. Also, the nominee was to reconvey to the trustees a parcel on Greene avenue. The husband was to join in these two conveyances, vesting title in the trustees for the purposes of the trust. The trustees were then to sell promptly these two properties, and the net proceeds were to be applied by them to the purchase of a new and less expensive

home for the parents and their children. The title to the new home was to be taken in the name of the parents as tenants in common. If a surplus remained after the purchase, it was to be divided between the parents — two-thirds to the husband and one-third to the wife. The husband, who evidently had some independent means, agreed to pay all charges on the two pieces of property up to the time of their sale and also to pay taxes and water rates on the new home when it should be purchased, and the interest on any mortgage which should be placed thereon. There are other details concerning the foregoing provisions which are now unimportant.

Paragraph eleventh of the agreement provided as follows: " The party of the first part [the husband] undertakes and agrees to pay to the party of the second part [the wife] the sum of Twenty ($20.00) dollars per week for her maintenance and support, from the date of this agreement."

There was a recital in paragraph fifteenth of the intentions of the parties, which were, briefly: (a) To avoid the sale under foreclosure of the Linden avenue property; (b) " To enable the purchase of a new home which will be less expensive to maintain than 38 Linden Avenue and to provide for a temporary residence " in the meantime; " (c) to give to the party of the second part one-third of the proceeds which may remain in the hands of the said trustees after said new home has been purchased and cleared from encumbrances. (d) To make proper provision for the support of the party of the second part."

Except for a conveyance of the two properties to the trustees, the release of dower by Mrs. Lester, and the giving of the mortgage by the trustees on the Linden avenue property, nothing was done to carry out the provisions of the agreement. This was evidently due to the attitude of Mr. Lester, who declined to go further with the matter; and the wife and children took no action to enforce their rights. The parents and at least some of the children continued to live together at the Linden avenue home. Mr. Lester collected the income from the Greene avenue property. It does not appear to what purpose this income was applied. Lester died June 3, 1932, leaving a last will and testament in which the plaintiff was named executor and trustee. One of the trustees (Charles B. Lester) predeceased the testator.

The complaint alleged, and it has been determined by the decision and judgment, that the trust agreement created a valid power in trust and that it has now failed, with no duty or obligation remaining in the surviving trustee which she might or could perform in any lawful manner; that no estate vested in the trustees or in the widow;

and that the title, subject to the execution of the power, remained vested in the husband to the date of his death and is now vested in the plaintiff, subject to the right of dower of the widow, unincumbered by any power under the agreement. The validity of the mortgage given by the trustees is not questioned.

The widow and the surviving trustee, by their answers and on the trial, disputed the conclusion that the power in trust has failed. The appellant asserts that the real property remains subject to the execution of the trust as a power (Real Prop. Law, § 99); that the power is irrevocable unless an authority to revoke it is granted in the instrument which created the power (Real Prop. Law, § 148); and that no such authority can be found in the agreement. It is argued that material purposes remained to be fulfilled on behalf of the wife; that she is still entitled to have a home purchased for her benefit and to her one-third share in any surplus arising from the sale of the two parcels and the purchase of the new home.

We recognize the general principle that where a power in trust has been created without limitation of the time of its exercise, the death of the person creating it does not revoke such power if it is clear that the original purpose and intent may be substantially carried out; and that such power will endure so long as it is necessary to give effect to the expressed intention. (*Cutler* v. *Winberry*, 179 App. Div. 221; *Cotton* v. *Burkelman*, 142 N. Y. 160.) In Perry on Trusts (6th ed.), section 498, it is said: " If the powers are not confined to the continuance of the trust, yet they will cease when the objects of the trust have been fully exhausted, and not before." But a power to sell fails and becomes extinct unless it may be exercised in the manner and for the precise purpose declared or intended by the donor. When the purpose becomes wholly unattainable the power ceases, and this is so although the purpose is defeated by the voluntary act of the person for whose benefit the power was created. (*Hetzel* v. *Barber*, 69 N. Y. 1.)

Here the main purpose of the power was specific, to wit, to sell the two properties and to purchase a home for the parents and their children. The parents were to take title as tenants in common, with the surplus, if any, to be divided between them as hereinbefore stated. The chief purpose has quite evidently failed. There can be no home in which the husband may reside and no surplus in which he can now share. To be sure, the property might be purchased and the surplus divided, with the title taken in the name of the mother as the owner of an undivided one-half thereof, with the title to the remaining one-half in the eight children surviving their father, and with the surplus apportioned between them on the basis originally agreed upon. But this was not the purpose con-

templated when the power was given, as expressed in the contract or which may be implied. " The intent is much regarded in the construction of these powers;" and the power must be construed with greater or less latitude as would best meet the intent. (*Jackson* v. *Jansen*, 6 Johns. 73, 81.) The " great object " of the power was to provide a home for the husband and wife and to furnish them certain sums of money if a surplus became available; and it was granted upon the condition necessarily implied that it should be exercised for their joint benefit. When the intended dispositions of the money which should arise from the sale of the real estate are to a great extent impossible, the intentions of the one giving the power are frustrated and the power fails because its objects are unattainable. (*Sharpsteen* v. *Tillou*, 3 Cow. 651, 660.) A power is necessarily extinguished when the purposes for which it was created have ceased to exist. (1 Tiffany Real Prop. [2d ed.] § 331.) It may be implied that the parties understood that the power should be extinguished if not exercised during their lifetime.

We think there are further reasons to support the argument that this power has failed. Fifteen years passed between the date of the grant of the power and the death of the grantor; and all of the parties acquiesced in a different arrangement by remaining in the property at 38 Linden avenue and making their home there. It was the expressed intent that the power should be exercised promptly and a new home obtained. There was nothing to interfere with the execution of the power by the trustees except the natural inclination to conform to the wishes of their father, in which policy the mother acquiesced. She could have sought relief in the courts for a direction for the trustees to act; but she did not. In part, at least, the purpose has been defeated by her voluntary act. The substitute arrangement may have been deemed more advantageous. While the mere lapse of time is not determinative of the question, it creates a strong presumption concerning the practical construction the parties gave to the terms of the instrument as to when the power would fail, or of abandonment of their rights thereunder. (*Moores* v. *Moores*, 41 N. J. Law, 440.) " It is a maxim, when the reason of a law ceases, the law also ceases; so with powers, they necessarily expire when the objects of their creation fail, have become impossible or unattainable." (*Smyth* v. *Taylor*, 21 Ill. 295, 301.) Here the parties all remained quiescent until the main objects of the power in trust became unattainable. We think that under the doctrine of practical construction the parties abandoned and relinquished, in favor of another arrangement, the powers that might have been exercised in their behalf, and that they are now estopped from asserting rights which were

once enforcible but have long remained dormant. Property values necessarily must have changed. Some of the children have grown up and have made their homes elsewhere. The husband and father has died. It is not possible that he may have the benefit of the new home contemplated when the power in trust was created, and he may not have the benefit of sharing in the surplus. Conditions are entirely different from those existing in 1917. The purposes have become extinct and the power has failed. (*Swift's Appeal,* 87 Penn. St. 502; *Conant* v. *Stone,* 176 Mich. 654.) We reach the conclusion, therefore, that the judgment, in so far as it relates to the power in trust and cognate subjects, must be affirmed.

There remains to be considered the counterclaim of Florence L. Lester under the provisions of paragraph eleventh of the agreement, wherein Mr. Lester, the husband, undertook to pay to his wife the sum of twenty dollars per week for her maintenance and support. It has been found as a fact that she received no payments from him on account of this contract prior to December 1, 1930, and after that time only in casual amounts; and in fact it appears that the husband did nothing for her support, although constantly urged by his children either to pay according to the agreement or at least to furnish her support. The husband did not engage in business after making the agreement. As we have said, he did collect the rents of the Greene avenue property and apparently had other means. But the wife was evidently supported in part by some separate income of her own, and in part by contributions made by her children in the form of paying board or otherwise. When the husband was in his last illness he paid to the daughter, Florence, twenty-five dollars per week—the principal part of which was paid out for his own expenses, for bills of physicians, and for his own food and the like. About five dollars a week was left over, and this was utilized for the household during the last year or two of Mr. Lester's life. This contribution was not entirely voluntary. It has been found that there was no waiver on the part of the wife of payment under the contract.

Nevertheless, the counterclaim was dismissed on the theory that it was violative of section 51 of the Domestic Relations Law, which provides, in brief: "A married woman has all the rights in respect to property, real or personal, * * * and to make contracts in respect thereto with any person, including her husband, * * * as if she were unamarried; but a husband and wife can not contract to alter or dissolve the marriage or to relieve the husband from his liability to support his wife." It was held by the learned trial justice that as these parties were living together at the time they made the agreement and did not thereafter separate, this contract

was invalid because it "attempts to relieve the husband of his liability to support his wife, and although the wife released her inchoate right of dower in certain properties as part consideration, its non-enforcible character remains."

We do not take that view of the question of legal liability. The contract was founded on a valid consideration, to wit, the release of the inchoate dower rights of the wife. (*Garlick* v. *Strong*, 3 Paige Ch. 440; *Simar* v. *Canaday*, 53 N. Y. 298.) As has been said, one of the intents of the parties as expressed in the contract was "to make proper provision for the support of the party of the second part." It was contemplated that they should live together, and they did so continue until separated by the death of the husband. There was no purpose in the contract to in any way dissolve the marriage, nor can we find a purpose of relieving the husband of his duty to support the wife. On the contrary, the agreement confirmed that duty by fixing a tentative sum applicable to her support and very likely that of such of their children as were not able to pay board. It was in the nature of an agreed allowance, giving to the wife rather than to the husband the right to say what was necessary for her support and the manner of expenditure. Such allowances are common in modern domestic affairs and do not relieve the husband of his duty to support. (*Young* v. *Valentine*, 177 N. Y. 347, 350, 352.) If the amount turned out to be inadequate, the husband was not relieved by the agreement from the duty to provide for her suitably. If the house they lived in were lost, it was his duty to provide another. It cannot be presumed from the terms of the agreement that the allowance was the equivalent of full support by the husband or that he was relieved of his obligation. (*Rodgers* v. *Rodgers*, 229 N. Y. 255, 259.)

It is quite evident that the husband was or had become a selfish, self-absorbed and irresponsible man, neglectful of his duties and obligations. Doubtless it was deemed wise, when these property adjustments were being made, that he be committed to provide a definite sum. In his lifetime he never paid this amount or furnished its equivalent by providing other support. The claim is a just one and should be enforced. In fact, there is no objection on the part of those interested, and the sole objection is made by the executor, which takes a somewhat partisan attitude in respect to the claim in which it has no interest.

When a separation agreement is made between a husband and wife who have actually become separated, such an agreement is at best only tentative and does not become absolutely binding. The husband is not relieved thereby of his duty of support if he had failed in the agreement to make ample provision, or if his

subsequent affluence makes the provision insufficient. (*Tirrell* v. *Tirrell*, 232 N. Y. 224; *Harding* v. *Harding*, 203 App. Div. 721; affd., 236 N. Y. 514.) When the parties are living together they may by agreement determine the manner in which the obligations of marriage shall be performed without destroying the obligations which the law has affixed to the marriage contract. (*Matter of Burridge*, 261 N. Y. 225, 227.) Courts will not make a strained construction of the statute to declare a contract between husband and wife invalid. (*Werner* v. *Werner, No. 3*, 169 App. Div. 9, 16.) There was no impairment of the obligations of marriage here — rather, the purpose of the agreement was to promote and sustain the obligation of the husband. " The primary duty to take care of and support a wife is with the husband, and it cannot be supposed, unless the circumstances clearly require such conclusion, that he intends, while she is living with him, to deny himself that right, relieve himself from all responsibility in that respect, and to devolve the performance of that duty wholly upon another." (*Zimmer* v. *Settle*, 124 N. Y. 37, 42.)

The contract is under seal, so that there is no question of the Statute of Limitations. The defendant should be permitted to recover the amount unpaid from the date of the execution of the contract to the date of the husband's death. The duty of a husband to support his wife ceases with his death unless he makes some explicit provision to the contrary. There is in this contract no express purpose of continuing support after the death of the husband.

The judgment should be modified by allowance of the counterclaim to the time of the husband's death, subject to the deductions of five dollars a week, which may be regarded as paid during the husband's last illness. In other respects the judgment should be affirmed, without costs here or on the trial.

Present — KAPPER, HAGARTY, CARSWELL and DAVIS, JJ.; LAZANSKY, P. J., not voting.

Judgment modified by striking out the paragraph thereof dismissing the counterclaim of Florence L. Lester and inserting in lieu thereof a paragraph directing judgment in favor of defendant Florence L. Lester on her counterclaim to the time of the husband's death, subject to the deduction of five dollars a week, which may be regarded as paid during the husband's last illness; and by striking out the costs allowed on the trial. As so modified the judgment is unanimously affirmed, without costs. Certain findings will be reversed and new findings made.

Settle order and findings on notice.