WILLIAM B. YOUNG et al., as Executors of MARIE ANTOINETTE VALENTINE, Deceased, Respondents, *v.* BENJAMIN E. VALENTINE, Appellant.

1. HUSBAND AND WIFE. The obligation to support his wife and their children rests primarily upon the husband; no obligation rests upon the wife to support the family, although she has a separate estate. If by reason of a valid agreement she applies her separate estate to its support equity will not reimburse her; but unless the agreement is plainly and definitely established and is fair, reasonable and just, it will not be enforced.

2. REFEREE'S POWER TO TAKE AND STATE ACCOUNT WITHOUT ENTERING INTERLOCUTORY JUDGMENT. A referee appointed to hear and determine the issues in an action for an accounting has power to take and state the account between the parties without making and entering an interlocutory judgment that an account is necessary before proceeding with the action.

3. INCIDENTAL STATEMENT OF DECEASED WITNESS AS TO WHICH SHE COULD NOT HAVE BEEN CROSS-EXAMINED, INADMISSIBLE. Evidence of an incidental statement by the plaintiff, who died after the commencement

of the action, made by her upon the taking of her deposition before a referee in a special proceeding, to the effect that her husband did not support her; that she was obliged to support herself and pay all the bills, which was immediately stricken out and became no part of the evidence received by the referee, so that she had no right or opportunity to explain it or to be cross-examined in relation thereto, is inadmissible upon any ground, either under section 830 of the Code of Civil Procedure or at common law.

*Young* v. *Valentine*, 78 App. Div. 633, affirmed.

(Argued January 18, 1904; decided February 9, 1904.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 3, 1900, affirming a judgment in favor of plaintiffs entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*David B. Hill* and *B. E. Valentine* for appellant. The refusal of the referee to try the issues formed by the pleadings and his decision that " the only issue is to ascertain how the account stands" between the parties was error, which prejudiced defendant and prevented him from adducing the proofs which he could have introduced after a decision defining the subjects an accounting should extend to. (*Russell* v. *McCall*, 141 N. Y. 437; *C. B. Co.* v. *Howlett*, 169 N. Y. 293; *Gaveyznski* v. *Russell*, 75 Hun, 493; *Kirkwood* v. *Smith*, 72 App. Div. 429; *Jordan* v. *Underhill*, 71 App. Div. 560; *E. T. Co.* v. *Bickford*, 142 N. Y. 225; *Weil* v. *Levy*, 80 Hun, 382; *McCartan* v. *Van Syckel*, 10 Bosw. 694; *Boughton* v. *Flint*, 74 N. Y. 476; *Wright* v. *Delafield*, 25 N. Y. 270.) The referee erred, to the prejudice of defendant, in excluding documentary evidence bearing directly on the subject of the sixteenth exception to the account. (*Sharpe* v. *Freeman*, 45 N. Y. 804; *Flora* v. *Carbeau*, 38 N. Y. 113.) The referee erred in refusing to allow to the defendant the payments which were concededly made by him to his wife, and in holding that such payments might be regarded as

gifts to her for household expenses, for which she need not account herein. (*People ex rel. v. Cullen,* 153 N. Y. 629; *People* v. *Pettit,* 74 N. Y. 320; *Johnson* v. *Barnes,* 69 Iowa, 641; *Tiemeyer* v. *Turnquist,* 85 N. Y. 516; *Bank* v. *Guenther,* 123 N. Y. 568; *Nostrand* v. *Ditmas,* 127 N. Y. 365; *Hendricks* v. *Isaacs,* 117 N. Y. 412.)

*Charles E. Hughes* and *George D. Beattys* for respondents. There is nothing before this court for review but the exceptions to the rulings of the referee. (*Adams* v. *Elwood,* 176 N. Y. 106; *A. College* v. *Ritch,* 151 N. Y. 282; *Ayres* v. *D., L. & W. R. R. Co.,* 158 N. Y. 254; *Farleigh* v. *Cadman,* 159 N. Y. 169; *Marden* v. *Dorthy,* 160 N. Y. 39; *Reed* v. *McCord,* 160 N. Y. 330; *Meserole* v. *Hoyt,* 161 N. Y. 59; *Cronin* v. *Lord,* 161 N. Y. 90; *Hilton* v. *Ernst,* 161 N. Y. 226; *C. El. S. Co.* v. *A. T. Co.,* 161 N. Y. 605.) The referee did not err in taking and stating the account without the entry of an interlocutory judgment. (*Manning* v. *Manning,* 87 Hun, 221; *Garcznski* v. *Russell,* 75 Hun, 492; *C. B. Co.* v. *Howlett,* 169 N. Y. 293, 297.) The referee did not err in excluding the deposition of Mrs. Valentine. (Code Civ. Pro. § 830; *Varnum* v. *Hart,* 47 Hun, 20.) The facts, as found by the referee, justify the legal conclusion that appellant should not be allowed to credit his account with the payment made to his wife and used by her for household purposes. (*Edson* v. *Parsons,* 155 N. Y. 555; Schouler on Dom. Rel. [5th ed.] §§ 42, 61; Bishop on Mar., Div. & Sep. §§ 1184, 1186; *Keller* v. *Phillips,* 39 N. Y. 351; *Hendricks* v. *Isaacs,* 117 N. Y. 411; *Wetmore* v. *Wetmore,* 149 N. Y. 520; *Buchanan* v. *Tilden,* 158 N. Y. 109, 117; *Hatch* v. *Leonard,* 165 N. Y. 435; *Bradt* v. *Shull,* 46 App. Div. 347; *Graham* v. *Schleimer,* 28 Misc. Rep. 535; *Byrnes* v. *Rayner,* 84 Hun, 199; *Matter of Smith,* 18 Misc. Rep. 139.)

MARTIN, J. While other relief was demanded in this action when commenced, after the death of Mrs. Valentine it

was continued and tried as an action for an accounting by the defendant for the moneys, securities and property which came into his hands as her attorney or fiduciary agent, all other matters being practically withdrawn. Although a great number of transactions were investigated on the trial and passed upon by the referee, but a single question remains open, as all others have been finally disposed of by the unanimous affirmance of the judgment entered upon the referee's report and by the stipulation of the parties that his decision should be and remain final, except that portion which related to the payments to Mrs. Valentine or to her bank account by the checks of the defendant. The decision of the referee, being in the short form, is to be treated as a general verdict, and we are bound to assume, not only that all the facts alleged by the plaintiffs bearing upon the question involved were sustained by the evidence, but also that all facts alleged by the defendant and not found by the referee have been rejected or expressly negatived. (*Critten* v. *Chemical Nat. Bank,* 171 N. Y. 219, 231; *Hutton* v. *Smith,* 175 N. Y. 375, 378; *Marden* v. *Dorthy,* 160 N. Y. 39, 45.)

The defendant was a lawyer practicing his profession in the city of Brooklyn. His family consisted of himself, his wife, and four daughters who lived with their parents and were being educated at some of the best available schools, and the family was maintained without extravagance and in a manner befitting their position in the community. The defendant's wife had no separate estate until 1892. The defendant from 1888 drew his checks and deposited them in the Brooklyn Trust Company to the credit of his wife, to furnish her the money with which to pay the necessary household and family expenses. His wife drew her checks against such deposits and used them to pay the various persons with whom she dealt in supplying the necessaries for the household, and this practice continued until the commencement of this action. The defendant well knew that the family expenses were paid out of the checks and funds thus turned over to his wife, and that he was not to keep

accounts with or directly pay the various tradesmen who supplied the family with necessaries. The amount of such checks from March, 1892, to December, 1898, was more than thirty thousand dollars. The defendant had several bank accounts, one as administrator, another as individual, and still another as attorney, the last, however, containing his individual funds. The defendant drew seventy-five checks in all on these accounts for household expenses, of which ten were as administrator, twelve as attorney, and the remainder as an individual, and several of the amounts paid by the ten checks were carried into the account presented by the defendant as " cash deposited," thus raising the presumption that such checks were not drawn or delivered to Mrs. Valentine, but were drawn to " cash " or " self " and the proceeds deposited to her credit. There is no evidence showing that Mrs. Valentine knew the source of any such funds, nor in what manner her own funds were deposited. When such deposits were made the family were all living together at 21 Monroe place, sometimes on the Storrs farm, and occasionally at Woodsburg, L. I. Mrs. Valentine owned the Storrs farm and the house at 21 Monroe place, and the defendant owned the place at Woodsburg. On the accounting the defendant presented a schedule of accounts showing his dealings with his wife's estate, in which he charged her and credited himself with all the funds and checks deposited in the Brooklyn Trust Company and used in paying the necessary living expenses of the family, thereby casting upon her the entire burden of maintaining the whole family out of her separate estate. There was no contract, agreement or understanding between the defendant and his wife, whereby she agreed to relieve him from his legal obligation to support his family during any portion of the time covered by the accounting, and the funds and checks turned over by the defendant to pay household expenses were his own and were furnished by him to discharge his obligation to furnish his family with proper support becoming their situation and condition in life, and he knew that they were for that purpose.

Briefly stated, the foregoing were the facts found by the learned referee as to the matters referred to and included in the plaintiffs' sixteenth exception to the defendant's account, as set forth in the referee's memorandum of opinion.

The effect of the stipulation between the parties was to make the memorandum opinion a part of the record, so far as the questions involved in the sixteenth exception are concerned. That the checks and cash furnished by the defendant were actually used in paying the household and family expenses of the defendant and his family, including himself, his wife and four daughters, and that the same methods had been employed since 1888, is conclusively established and not denied. The chief issue between the parties in relation to that question was whether, under the proof, it was the duty of the defendant to support his own family or whether that obligation devolved upon his wife. There is no doubt that in this state, as between husband and wife, the primary obligation to provide for the support of his wife and their children rests upon the husband, and that the wife is not bound to maintain her husband and children, even though she may have a separate estate. Yet, if the income of the wife has, under and by virtue of a sufficient and valid agreement, been applied to the maintenance of the family, in equity she cannot make a claim for reimbursement out of her husband's estate, but to bar such a claim the agreement between the husband and wife must be plainly and definitely established, and must be fair, reasonable and just, or it will not be enforced.

As we have seen, the learned referee found that there was no contract, arrangement or conduct with or on the part of Mrs. Valentine by which she became liable to bear or pay the household expenses with which she was sought to be charged by the defendant. The evidence plainly discloses that she repeatedly and continuously refused to assume any such liability, and there is little, if any, reliable evidence to the contrary. The record in this case will be examined in vain to find, even in the great volume of testimony given by the defendant himself, any direct or sufficient proof of a valid and binding agree-

ment or understanding which would relieve him from the legal obligation to support himself, his wife and family. The defendant's testimony relating to this subject was somewhat evasive and contradictory. Substantially all the evidence from which it is claimed that the liability of Mrs. Valentine arose related to transactions testified to by the defendant which were entirely within his knowledge, and discloses that many, if not most, of his dealings with her property were hidden from her, were devious and well calculated to keep from her any knowledge as to her property or the disposition made of it by him, and were not such as an agent or trustee should perform as to the property of his principal or *cestui qui trust*. If, upon the whole record, the transactions of the defendant as to his wife's property were not disclosed with desirable certainty, it can be attributed only to his conduct and the nature of his testimony. His account of his steward-ship and of the property which came into his hands as such agent or trustee is not of a character to elicit the fullest cre-dence, or from which it can be fairly implied or understood that his wife ever agreed or knowingly consented to the use of her estate for the support of her husband and his family. From the evidence the learned referee was clearly justified in finding that the defendant was under legal obligation to sup-port his own family, and that his wife did not consent to the application of her property to that purpose, or thus apply it with a knowledge that the checks and cash furnished therefor by her husband were a part of her own property, and that she never intended to apply any part of her own estate to that purpose. No one can read the record in this case with-out reaching the conclusion that the learned referee treated the defendant with the utmost fairness, if not with undue liberality. He as the agent of his wife had received the moneys, property and securities of a large estate belonging to her, which he had transferred, dealt with and manipulated in an improper manner, transferring portions of it to him-self, to his sister, to his mother, and to others, without any consent of or consultation with Mrs. Valentine. When he

23

was called upon to account for her property and the manner in which he had used and disposed of it, instead of making a fair, ingenuous and proper account, he declined to make any account whatever, and it was only when he had been placed upon the witness stand and subjected to the most rigid and searching examination that any knowledge as to his wife's estate or as to his dealings with it could be obtained. Moreover, the history which he gave as to his dealings with her estate was not calculated to inspire confidence in his methods, the truthfulness of his statements, or the accuracy of his accounts. His testimony was evasive and evinced a plain intent to suppress in every way possible the facts as to his dealings with her estate, its amount, and in what invested. There is nothing in this case calling for an undue consideration of the technical claims of the defendant or requiring us to give an exaggerated effect to any inequitable technicality presented.

With this condition of the record, it is obvious that the findings of the referee that there was no agreement, arrangement or understanding which justified the defendant in charging his wife's estate with the family or household expenses, are final and cannot be reviewed by this court. Therefore, the only questions we have jurisdiction to review are those relating to the admission or rejection of evidence or some material ruling of the referee to which an exception was taken, and which related to the matters included in the sixteenth exception to the defendant's account as set forth in the referee's memorandum of opinion.

The first exception upon which the defendant relies is to the refusal of the referee to make and enter an interlocutory judgment to the effect that the taking of an account was necessary before proceeding to take the account between the parties. The practice adopted by the referee was proper, is justified by the decisions of this court, and constituted no error. (*Russell* v. *McCall*, 141 N. Y. 437; *Canton Brick Co.* v. *Howlett*, 169 N. Y. 293, 297.)

The appellant likewise contends that the referee erred in denying his motion to amend his pleadings so as to demand

judgment for certain securities which had come into the possession of the plaintiffs, and to permit him to recover therefor in this action.  That question was not reserved by the stipulation of the parties, and, hence, the determination of the referee must be regarded as final and is not subject to review by this court.  Besides, no such answer was necessary, as that relief was demanded in his original pleadings, and the facts were all before the referee and were settled by his report, apparently to the satisfaction of the appellant.

Upon the trial one of the defendant's daughters was called as a witness and permitted, under his objection and exception, to testify to the manner of paying the household expenses before her grandfather's death, and that they were paid in the same manner before as they were afterwards.  This evidence was admissible as proof of a fact which bore upon the issues involved in the case.  But if it was inadmissible it was harmless, as the same fact had already been proved without objection and as to it there was practically no dispute.

The next exception discussed by counsel arose as to the admission in evidence of the deposition of Mrs. Valentine which purported to have been taken before a referee appointed to take proof upon a motion to show cause why she should not intervene in a special proceeding to require the city of New York to pay to the defendant an award made in the matter of the opening of Melrose avenue, and why such award should not be paid to her.  This evidence was objected to by the plaintiffs, their objection was overruled, and the evidence was admitted so far as it bore upon the question of *res adjudicata.*  The defendant excepted to that ruling to the extent that it limited its admission to that purpose.  The counsel for the plaintiffs then admitted that the deposition bore the signature of Mrs. Valentine who had previously died.  The only additional purpose for which the defendant sought to introduce the deposition was to show what Mrs. Valentine said on that occasion, although it was no part of the evidence received by the referee.  Her statement in that respect was immediately stricken out on the defendant's own motion and before

the deposition was signed by her.   In that proceeding the defendant cross-examined his wife, and propounded to her this question : " Q. Did you ever undertake, from the time your husband qualified as administrator to your father's estate and took charge of your property as your agent, did you ever impose any limitations on his authority to act up to December 8th, 1898, when you revoked the letter of attorney ?    A. Well, I told you that I did not think you were doing right, and I asked you for an accounting, but you did not give it. Q. That was within the last year or two ?   A. Oh, no ; I told you that some years ago.   You did not support me ; I had to support myself — pay all the bills.   Mr. Valentine : I move to strike out the answer.   Stricken out."   The defendant now insists that although this evidence was stricken out and properly formed no part of the record or of the deposition when signed by Mrs. Valentine, still, that it was admissible as proof to sustain his claim that he did not support Mrs. Valentine and the other members of his family, but that they were supported by her.   It is extremely difficult to understand how, after this evidence had, upon the defendant's own application, been properly removed from, and, hence, ceased to be a part of the deposition, he may now insist that it remains a part of it, and, consequently, is evidence against Mrs. Valentine,  with no proof whatsoever showing its admissibility except the mere admission of counsel that the deposition bore her signature.   When this evidence was eliminated from the deposition by the order of the referee, it was as though it had never been given, and after the defendant had procured it to be stricken out, it cannot be properly used by him for any purpose whatsoever.   If it had been permitted to remain, Mrs. Valentine might not have signed the deposition, or it might have been explained by her upon her cross-examination. But when it ceased to be a part of her evidence, then she could not be cross-examined in relation thereto as she would not have been allowed to explain that which formed no part of her deposition.   When this deposition was offered in evidence she was dead, so that no opportunity could then be

given her to explain a statement which it is evident was hastily and petulantly made and which was immediately eliminated.

Nor was it admissible as the testimony of a deceased witness taken upon a former trial, either under section 830 of the Code of Civil Procedure, or at common law. The fundamental ground upon which evidence given by a witness, who afterwards dies, may be read in evidence on a subsequent trial, is that it was taken in an action or proceeding where the parties against whom it is offered or their privies have had both the right and the opportunity to cross-examine the witness as to the statement offered. "The principle on which, chiefly, this evidence is admitted, namely, the right of cross-examination, requires that its admission be carefully restricted to the extent of that right; and that where the witness incidentally stated matter, as to which the party was not permitted by the law of trials to cross-examine him, his statement as to that matter ought not afterwards to be received in evidence against such party." (1 Greenleaf on Evidence, § 164; Chase's Stephen's Digest [2d ed.] art. 32, p. 107 *et seq.; Varnum* v. *Hart,* 47 Hun, 18, 25.)

Under this general principle which prohibits the reception in evidence of a statement or deposition made by a deceased witness, unless the party against whom it is offered has had the right to cross-examine the witness as to the statement made, it is clear that the deposition offered in this case was not admissible, especially as to the particular statement which was immediately stricken out, so that Mrs. Valentine or her counsel had no right or opportunity to explain it or to cross-examine her in relation thereto. Hence, it follows that the referee committed no error in rejecting the portion of the deposition which the defendant sought to introduce, and his exception cannot be sustained.

Moreover, if it were admitted that the ruling of the referee was erroneous in this respect, we think it would not justify a reversal. This action was in equity, and the rule which is applicable to errors in the rejection or reception of evidence in equity cases is essentially different from that in actions at

law.  In the former a new trial is granted or refused, not upon the principles applicable to a strict bill of exceptions, but upon those which governed a court of equity, and unless the errors are such as to render the trial unfair or substantially affect the decision, a new trial will be denied. (*Forrest* v. *Forrest*, 25 N. Y. 501; *Colie* v. *Tifft*, 47 N. Y. 119, 121; *McGean* v. *Manhattan Ry. Co.*, 117 N. Y. 219, 224.)  Obviously the judgment should not be disturbed upon the ground of the rejection of this evidence, as its rejection was entirely proper.

On the trial the defendant offered in evidence the bank book of Mrs. Valentine showing her deposits in the Brooklyn Trust Company, which was objected to by the plaintiffs as immaterial and incompetent.  The referee received it in evidence, but held that he would not consider any portion of the entries covering a period prior to 1892, nor subsequent to the commencement of the action.  This ruling was excepted to by the defendant.  In it we find no error.  Anterior to 1892 Mrs. Valentine had no separate estate, and upon the accounting that which had previously occurred was not within the issue between the parties.  Besides, under the stipulation of the parties, it was agreed by the defendant and upon his motion that for the purpose of this appeal and for expediting the settlement of the case on appeal and eliminating unnecessary matter from the record, the evidence submitted to the referee, his action and decision as set forth in his memorandum of opinion were proper and warranted by the facts, except his action under the head of "Sixteenth Exception," which was to his account as to checks furnished by him for the years 1892 to 1898, inclusive.  Under that stipulation the exception of the defendant to the rejection of the evidence as to Mrs. Valentine's deposits anterior to 1892, seems to be excluded from the questions reserved on this appeal.

The only remaining contention is that the referee erred in refusing to allow the defendant the payments made by him to his wife, amounting to more than thirty thousand dollars, and in holding that such payments should be regarded as money

furnished her for the payment of the household expenses. That question is foreclosed by the unanimous decision, as upon the evidence it was at most a mere question of fact, and under the Constitution and statutes it cannot be reviewed by us.

These considerations lead to the conclusion that the referee committed no error which would justify us in reversing the judgment entered upon his report, and that the judgment of the Appellate Division should be affirmed, with costs.

GRAY, BARTLETT and WERNER, JJ., concur; PARKER, Ch. J., O'BRIEN and VANN, JJ., dissent.

Judgment affirmed.