WILLIAM HODSON, Commissioner of Public Welfare of the City of New York, by HARRY W. MARSH, First Deputy Commissioner of Public Welfare, on Behalf of GEORGE PICKER, Petitioner, *v.* SADIE PICKER, Respondent.

Domestic Relations Court of City of New York, Family Court Division, Bronx County, May 6, 1936.

*Paul Windels, Corporation Counsel* [*Rose Schnaph, Assistant Corporation Counsel,* of counsel], for the petitioner.

*Jacob Leibner*, for the respondent.

PANKEN, J. This petition is made by the commissioner of public welfare of the city of New York on behalf of a dependent spouse for an order to direct the respondent, the wife of the dependent spouse, to provide for fair and reasonable support.

While the petition is made by the commissioner of public welfare of the city of New York, the petitioner in fact, however, is the husband of the respondent. This is the first petition presented to me wherein a husband asks for support from his wife. As far as I am able to ascertain, no proceeding has heretofore been commenced in the Domestic Relations Court of the City of New York by a husband for an order to require his wife to provide fair and reasonable support for him.

The facts, in so far as they are material to the determination of the motion to dismiss the petition is concerned, are as follows:

George Picker married the respondent on or about the 14th day of June, 1934, and they continued to live as husband and wife until December of 1935 in the borough and county of the Bronx, city and State of New York. In December of 1935 they separated. They are now residents in the said borough, county and State. It is not necessary to determine as to who was at fault in the separation that took place between husband and wife, since the basis of the petition is that the petitioner is a public charge, and that the primary obligation to support the petitioner rests with the respondent, and she has sufficient ability to do so.

On the motion to dismiss the petition for lack of jurisdiction, the court assumes that the facts necessary to establish the right of the petitioner to fair and reasonable support from his wife are established.

The question to be passed upon in the first instance is one of law rather than one of fact. The factual problem will be passed upon after the question of law is resolved.

It is contended by the respondent that the proceeding herein cannot be maintained on behalf of George Picker either under section 683 of the Greater New York Charter or under section 123 of the Public Welfare Law. Section 125 of the Public Welfare Law reads: " Liability of relatives to support. The husband, wife, father, mother, grandparent, child or grandchild, of a recipient of public relief or of a person liable to become in need of public relief shall, if of sufficient ability, be responsible for the support of such person. Step-parents shall in like manner be responsible for the support of minor step-children."

The provisions of section 125 make no distinction between husband and wife for the responsibility for the maintenance and support of either husband or wife if husband or wife is a recipient

of public relief or is liable to become in need of public relief. In either instance if the husband or wife be of sufficient ability the responsibility to support the dependent rests in the first instance with either husband or wife as the case may be.

The respondent directs my attention that the petitioner proceeded under both section 683 of the Greater New York Charter as well as under section 125 of the Public Welfare Law. Section 683 of the Greater New York Charter provides: " The parents, grandparents, children and grandchildren, and husband or wife, of sufficient ability, of a poor person who is insane, blind, old, lame, sick, impotent or decrepit so as to be unable by work to maintain himself, and the parents and grandparents of a destitute child must at their own charge support him in a manner sufficient to prevent him from being, or to avoid the liability of his becoming, a charge upon the public."

The husband on whose behalf the petition herein is presented is not disabled, crippled, sick or unable to work. Because of that it is argued on behalf of the respondent that she is not required, if she were financially able, to support her husband.

Section 125 of the Public Welfare Law does not limit liability of a person to support a dependent to only such who are disabled, crippled, sick or unable to work. As I read section 125 of the Public Welfare Law, a wife is required to support her husband if such husband is a recipient of public relief or is liable to become in need of public relief. Whether the husband becomes a public charge or is likely to become a public charge because of having been disabled, crippled, sick or is unable to work is not determinative of the obligation under the said section. The controlling factor is, has the husband properly become a public charge, or is he likely to become a public charge. If he has properly become a public charge, or is likely to become one, and the wife is in a position financially to provide for him, the duty devolves upon her to do so in the first instance. Only where a dependent has no such relatives as are enumerated in section 125 of the Public Welfare Law, able to provide and support him or her, then the obligation to support the dependent falls upon the community.

It has been argued that the duty to support a wife was always upon the husband both under the common law and continues under the legislation removing marital disabilities of the wife.

The obligation to support one's wife and one's family is well grounded in the law and the husband has always been held responsible for the support of his spouse. That, even though the wife was of sufficient means to support herself and was possessed of a separate estate. (*Young* v. *Valentine*, 177 N. Y. 347.)

That obligation rests on sound public policy and in furtherance of the continuance of the basis of civilized society — the family unit. Both for physiological and social reasons, the wife and the mother has been intrusted from time immemorial with the home-making and child-caring duties. To properly discharge her duties imposed upon her by physiological factors and assumed by her because of social needs, the burden to find support for herself or her children is removed from her shoulders and naturally falls to the lot of the husband and father.

Do these sound considerations relieve a wife of the obligation imposed upon her by law to provide for a dependent husband? I think not. A dependent husband, if not cared for by his wife or other relatives having ability to do so, will of necessity become a public charge.

Aside from the provisions of law as set forth in section 125 of the Public Welfare Law, it would seem that the same public policy which imposes the duty upon the husband to support his wife when she is in need and even when she in not in need, requires the wife to support the dependent husband when he is in actual need.

With the emancipation of woman and the con erring upon her by government and society of rights equal with those of the man, she must also assume and respond to obligations. When public policy and the law places obligations upon a husband to provide for his wife, a reciprocal obligation should be assumed by the wife if she is able to do so.

In *Young* v. *Valentine* (*supra*, at p. 352) the court says: " There is no doubt that in this State, as between husband and wife, the primary obligation to provide for the support of one's wife and children rests upon the husband, and that the wife is not bound to maintain her husband and children, even though she may have a separate estate."

As between husband and wife both having ability to support each other there is no obligation on the part of the wife to support her husband and her children. As between the State and the wife, the obligation to support a dependent husband, and the wife being able to do so, rests primarily upon the wife. This is not only an obligation compelled by moral considerations but as the law requires.

The development of the common law with all its restrictions upon women naturally resulted in the evolution of the theory that the obligation for the support of a spouse rested only upon the husband. The wife, under the common law, unless she was emancipated, was not entitled to compensation for services. There were other restrictions upon a wife's property rights and limita-

tions as to her rights as an individual. Those restrictions have now been removed. A married woman is almost in all respects a *feme sole*. She has acquired political rights equal to that of the male. She participates in the affairs of government first as an elector and she may participate as an actual official of government. Laws are no longer made for her or in derogation of her rights; she participates in law-making. The woman equally with the men are responsible for the law.

Having acquired all the rights that the husband possesses she also has been placed under obligations. (See Public Welfare Law, § 125, *supra*, and Greater New York Charter, § 683.)

Counsel for both the petitioner and the respondent have been unable to find any case directly in point as authority with respect to the liability by a wife for the support of a husband.

While the courts have not as yet explicitly and unequivocally determined the obligation of a wife sufficiently able to support a husband who is a public charge, practice of dependent fortune-hunters who would otherwise become public charges have long been supported by wives of sufficient ability.

I conclude as a matter of law that a wife of sufficient ability is liable for fair and reasonable support of a spouse who is the recipient of public relief or liable to become in need of public relief.

The Domestic Relations Court of the City of New York is the proper forum for the proceeding herein presented by the commissioner of public welfare of the city of New York. Section 162 of the Domestic Relations Court Act, in so far as it affects the petition herein, reads as follows: "Nor shall anything in this act be deemed to abridge or in any way impair the power or jurisdiction of the commissioner of public welfare to enforce the provisions of sections six hundred and eighty-three and six hundred and eighty-five of the Greater New York Charter nor of the provisions of the Code of Criminal Procedure relative to the support of poor persons in institutions. The action brought by said commissioner of public welfare to compel such support and the proceedings relative thereto shall, however, be brought in the Domestic Relations Court located in the borough in which the respondent lives, as shall be prescribed by the rules of the board, instead of before a magistrate as provided in said sections of the charter and Code of Criminal Procedure." (As amd. by Laws of 1934, chap. 362.)

The respondent is a resident of the borough of the Bronx, city of New York. The proceeding was commenced in the proper borough and in accord with section 162 of the Domestic Relations Court Act. The court has acquired jurisdiction of the persons

and the subject-matter. The motion, therefore, to dismiss the petition for lack of jurisdiction is denied.

The testimony submitted shows sufficient ability on the part of the wife to make fair and reasonable provision for the support of her husband. At the time the case was tried before me, to wit, on or about the 20th of March, 1936, it was amply proved by the commissioner of public welfare of the city of New York that George Picker was at that time a recipient of relief from the public and that the relief accorded by the community to the said George Picker was justified by the reason that he was at that time without any means or possessed of any property and out of work and unable to find any employment at which he could earn enough to fairly and reasonably support himself.

The briefs in this proceeding were not submitted to me until the 1st of May, 1936, some six weeks after the hearing was had. Circumstances and financial conditions may have changed during this interim. No definitive order will now be made. Let the parties appear before me on the 11th of May, 1936, ready to submit the present status of the petitioner's dependent.