## Department of Public Assistance v. Heinbaugh et ux.

*Joseph W. Ray*, for plaintiff.
*Anthony Cavalcante*, for defendants.

CARR, J., April 14, 1942.—The subject of this controversy is the liability of a married woman on an obligation made jointly with her husband to repay public funds expended for the support of the family. Judgment in favor of the Department of Public Assistance of the Commonwealth having been entered by confession against both husband and wife, she obtained this rule to show cause why as to her the judgment should not be opened to permit her to defend on the ground of her coverture.

The material facts alleged and admitted are these:

On January 25, 1940, Blair Heinbaugh, the husband, an indigent person, made application under the terms of the Public Assistance Law of June 24, 1937, P. L. 2051, as amended by the Act of June 26, 1939, P. L. 1091, 62 PS §2501, for assistance needed to enable him to maintain for himself and his dependents a decent and healthful standard of living. He had previously received such assistance from December 17, 1937, to March 18, 1938, amounting to $121.80, and

from August 29, 1939, to October 27, 1939, amounting to $61.30. On August 16, 1938, he and his wife, Elizabeth, had acquired some real estate as tenants by the entireties, and as a condition of the approval of his application of January 25, 1940, for further assistance, the department required them to execute and deliver to it a "Reimbursement Agreement," by the terms of which they acknowledged that their property was liable for the repayment of all assistance that had been or in the future should be granted to or for them, and agreed that the department should have a lien therefor on any property owned by them at the time of the application for assistance or that they might acquire while receiving assistance. The agreement contained also a warrant of attorney to confess judgment immediately in the sum of $2,000 and costs. Thereafter assistance was paid to the husband from February 2, 1940, to May 4, 1940, amounting to $88.80. On April 1, 1940, judgment was confessed against the husband and wife for $2,000 and costs.

Section 3 of The Support Law of June 24, 1937, P. L. 2045, 62 PS §1973, provides:

"The husband, wife, child, father, mother, grandparent and grandchild of every indigent person shall, if of sufficient financial ability, care for and maintain, or financially assist, such indigent person . . ."

Thus, the statute while retaining, as at common law, the liability of the husband for the support of his family despite the abolition of his common-law estate jure uxoris in the realty of the wife and his rights to her personalty, now imposes upon her a reciprocal duty to support the family should he become indigent and she have the means to maintain them. In such circumstances, the support of the family is, as between the wife and the State, an obligation primarily owed by her, and if, by reason of her failure to discharge it, the burden has fallen upon the State, she may justly be required to make restitution: Hodson, Commr., v.

Stapleton, 248 App. Div. 524, 290 N. Y. Supp. 570; Hodson, Commr., v. Picker, 159 Misc. 356, 287 N. Y. Supp. 642; Hodson, Commr., v. Holmes et al., 162 Misc. 226, 294 N. Y. Supp. 537; A. L. I. Restatement of Restitution, secs. 76, 113, 114.

Moreover, in respect to public relief funds of which she is the beneficiary, section 4 of The Support Law, as amended by the Act of June 9, 1939, P. L. 310, 62 PS §1974, imposes upon the wife the same duty of repayment that rests upon every other indigent person:

"The real and personal property of any indigent person shall be liable for the expenses of his support, maintenance, assistance and burial, incurred by any public body or public agency, if such property was owned during the time such expenses were incurred, . . ." See Waits' Estate, 336 Pa. 151.

In view of these statutory provisions and the principles of unjust enrichment, it seems clear that the agreement she executed jointly with her husband to reimburse the State was entirely consistent with the duty that the law itself required of her, and hence involved no element of suretyship. Her husband, unassisted by her, was unable to maintain himself or his family, and by uniting with him in an obligation by virtue of which they obtained funds for the support of themselves and their family she acted in her own interest, sharing in the consideration of the debt created and receiving the benefits: Barker v. Lambert et al., 86 N. H. 51; Reynolds v. Starks, 16 Ga. App. 606, 85 S. E. 950; Minnis v. Steele, 79 Ind. App. 45, 132 N. E. 702; and see Hanover Trust Co. v. Keagy, 335 Pa. 356; Slater v. Chiccarino et ux, 109 Pa. Superior Ct. 353; Grote, Trustee, v. McCann et ux, 127 Pa. Superior Ct. 563.

Although by the terms of The Support Law in effect at the time her agreement was signed (amendment of June 9, 1939, P. L. 310, sec. 1), her property was not liable for the repayment of assistance received before

August 18, 1938, her agreement as to these previous items did not lack consideration since the original statute in effect when that assistance was received (Act of June 24, 1937, P. L. 2045) permitted recovery even out of property acquired by the beneficiary after the receipt of the assistance. This consideration was the moral obligation that arose out of her antecedent legal liability: Stebbins v. The County of Crawford, 92 Pa. 289; Bailey et al. v. Philadelphia et al., 167 Pa. 569; 12 Am. Jur. 596 §101. Furthermore, her seal imported consideration: Conrad's Estate, 333 Pa. 561; Geiselbrecht, Executrix, for use, v. Geiselbrecht, 8 Pa. Superior Ct. 183.

Defendant refers to some of our early cases, of which Berger et ux. v. Clark, 79 Pa. 340, is representative, that held a joint purchase of family necessaries by husband and wife to be the contract of the husband alone. Such presumption, which resulted from the common-law conception of the unity of husband and wife, has since been invalidated by the passage of our Married Women's Property Acts. The separation of the individuality of the husband and wife, at least with respect to property rights, has been made so nearly complete by legislation (Act of June 8, 1893, P. L. 344, sec. 2, 48 PS §32) that when both join in the execution of an obligation they are prima facie joint debtors, and subject to all the legal incidents of joint indebtedness. Her emancipation has made her disability to contract so exceptional that to avoid her promise she must sustain the burden of showing that the debt was in fact the debt of her husband: Grote, Trustee, v. McCann et ux, supra. In the present case all that is pleaded by Mrs. Heinbaugh is that the assistance granted her husband was applied to the purchase of necessaries "and in the discharge of said husband's duty to keep and maintain your petitioner . . .", wherefore "said judgment should not have been entered against the petitioner, a married woman, for said sum, but should have been entered

solely against her husband, Blair Heinbaugh." This is obviously a mere conclusion unsupported by any facts tending to prove that she herself was without equal responsibility to the State for the support of the family.

The rule must therefore be discharged.

### Order

And now, April 14, 1942, the rule heretofore issued to show cause why the judgment at no. 475, March term, 1940, in favor of the Commonwealth of Pennsylvania, Department of Public Assistance, plaintiff, and against Blair Heinbaugh and Elizabeth Heinbaugh, defendants, should not be opened as to Elizabeth Heinbaugh and she be let into a defense, is discharged at her cost.