HELEN JONES, Petitioner, *v.* JOHN J. JONES, Respondent.

Domestic Relations Court of City of New York, Family Court Division, New York County, January 5, 1937.

*Paul Windels, Corporation Counsel [Charles C. Weinstein* and *Alice Trubin* of counsel], for the petitioner.

*Walter A. Caddell,* for the respondent.

PANKEN, J. In the testimony submitted to me on November 19, 1936, on the petition herein, it was established that at the time the marriage between the petitioner and respondent was contracted and consummated, the petitioner was the mother of a male child. The said male child was born out of wedlock and his father was one Stewart Atkinson; that sometime after the respondent married the petitioner the child was baptized. The baptismal certificate, marked in evidence, discloses that the child had been baptized as Robert Jones with the consent of the respondent and that the godfather and godmother of the child were friends of the respondent.

On the 1st of October, 1936, my colleague, Mr. Justice MAGUIRE, made a temporary order requiring the respondent to contribute six dollars weekly for the support of the child. It appears from the record in the case that the order was made on consent. On October 22, 1936, the temporary order heretofore referred to was continued by me. I have no power to vacate an order entered on consent by a justice unless proof in support of the application is submitted. No such proof had been submitted to me on October 22, 1936.

The respondent questions the jurisdiction of this court to make an order for the support of the child in question.

On the 19th of November, 1936, testimony was adduced before me, and at the conclusion of the hearing the temporary order was continued without objection.

On or about the 30th of December, 1936, pursuant to an order made by Mr. Justice JACKSON, the matter came on before me for the purpose of having additional proof submitted. That was done.

Two questions are presented for my determination: One, is the respondent obligated in law to contribute to and is he chargeable for the support of Robert Jones, the illegitimate child of the petitioner, born to her before he had married her? Two, is the petitioner entitled to an order to be made by this court directed against the respondent for her support and maintenance?

The first question presents the problem of a construction of the law and its applicability in the situation herein presented. Subdivision 5 of section 101 of the Domestic Relations Court Act provides as follows: " The step-parent of a child is hereby declared legally chargeable with the support of a step-child likely to become a public charge provided it is shown to the satisfaction of the court that such step-parent had knowledge of the child's existence at the time of said step-parent's marriage."

The question to be determined is whether the respondent herein is in the relationship of stepfather to the child. I have been unable to find a case directly in point on the question before me, nor is there any direct legislative mandate defining the relationship existing between the child and the respondent herein.

Section 125 of the Public Welfare Law is not helpful. In so far as the obligation of stepparents towards illegitimate children of a spouse, it is no different than the provision of subdivision 5 of section 101 of the Domestic Relations Court Act. The pertinent portion of section 125 of the Public Welfare Law reads: " Stepparents shall in like manner be responsible for the support of minor step-children."

Under section 120 of the Domestic Relations Law, both father and mother are responsible for the support of a child whether legitimate or illegitimate. Recently, in the case of *Lee* v. *Smith* (161 Misc. 43), I have had occasion to discuss the law with relation to the obligations of illegitimate children to their parents and the obligations of parents to their illegitimate children.

The case of *Ippolito* v. *Terragni* (140 Misc. 606), affirmed by the Appellate Term of the First Department, on the opinion of Mr. Justice EVANS, while not directly in point, has bearing upon the obligation of a father and mother for the support of a child whether it be legitimate or illegitimate. In the body of the opinion the following language appears, on page 607, which is approved by the Appellate Term: " If the child be illegitimate there is still an obligation, on the father, to support the child. The obligation does not rest on him exclusively, but, nevertheless, he is responsible with the mother, I think, jointly and severally  *  *  *  for the support and education of the child."

The fact that the father of a child is obligated for its support will not relieve a stepfather from the obligation imposed upon him under section 101 of the Domestic Relations Court Act. Assume that the mother of a child obtains a divorce from the father thereof, and thereafter remarries, the obligation to support the child, be it stepchild or otherwise, rests upon both the father and the stepfather, whoever is in a position to support such child, if the child

is, or is in imminent danger of becoming, a public charge. Before imposing the obligation on a stepfather to support his stepchild, proof must be adduced establishing the fact that the stepparent had knowledge of the child's existence at the time of the stepparent's marriage.

The respondent in this case had knowledge of the existence of the child at the time he was married to its mother. He had knowledge of the fact that the child was illegitimate, born out of wedlock. Upon proof of the fact that the child is a public charge, or likely to become such a public charge, the respondent is chargeable with the support and maintenance thereof, under subdivision 5 of section 101 of the Domestic Relations Court Act.

Is a child born out of wedlock to the mother to be considered a stepchild of the husband whom she subsequently marries and who is not the father of the child? In *State* v. *Scarborough* (108 W. Va. 9; 150 S. E. 219) it was said: " The word ' child ' should be construed as embracing legitimate and illegitimate issue." Thus it appears that there is no distinction made in the rights of children as between legitimate and illegitimate ones.

Webster's Dictionary defines " step " as follows: " A prefix used before father, mother, brother, sister, son, daughter, child, etc., to indicate that the person thus spoken of is not a blood relative, but is a relative only by the marriage of a parent."

The Century Dictionary defines " stepfather " as: " A man who is the husband of one's mother, but is not one's father."

It would appear, therefore, that the relationship of a child of whose existence a stepparent is aware at the time of the marriage, is that of a stepchild, whether it be legitimate or illegitimate.

In the case of *Matter of Larsen* v. *Harris Structural Steel Co., Inc.* (230 App. Div. 280), decided in the Third Department, the court held that " his relation to Ingred [illegitimate child, my own reference to the child in question] was not different from what it would have been had the child been born in wedlock. She was his step-child." At another point in the same opinion the court said: " Ingred's mother owed her the same obligation of support and care as if she had been born in wedlock." That is true in the case before me.

As to the latter question, the evidence submitted to me on the 19th of November, 1936, disclosed that the petitioner at that time and since her separation from her husband was employed and was earning approximately twelve dollars weekly. She was not at that time a public charge nor was she likely to become such. The testimony submitted to me on the 30th of December, 1936, shows that at this time she is industrially incapacitated. Exhibit 1 of

the 30th of December, 1936, submitted in evidence, by consent of both parties, which exhibit is a report from Dr. Chancellor H. Whiting, the court physician, certifies that " I believe that she should have medical treatment and can return to her usual work in a month's time." This exhibit is dated December 22, 1936. The petitioner testified that she had no funds, no property or any means for her support.

I am not impressed with the testimony of the petitioner that the conduct of the respondent was such as to justify her to leave him and that, therefore, her leaving him was in fact an abandonment by him of her. In response to a question, the petitioner testified as follows: " I believe I told my husband I never want to see him again and would have him arrested if he annoyed me."

Coupled with the uncontradicted testimony of the respondent that he had borrowed money to afford his wife the possibility of going to Florida and his turning over to her his pay envelope the entire period they have lived together except for one or three months, I conclude the conduct of the respondent was not such as might be construed to be compulsive of justification for the leaving by the petitioner of the respondent's bed and board.

The obligation on the respondent, however, to provide reasonable support and maintenance for the petitioner survives her abandonment of him if she is, or is likely to become, a public charge.

The proof in the case is that she is presently industrially incapacitated. As long as she remains so incapacitated or as long as she is unable to find employment at which she might earn an adequate sum for her maintenance and support, the respondent is required to contribute to such maintenance and support.

The mother is in law obligated to support the infant child. As in the case of *Matter of Larsen* v. *Harris Structural Steel Co., Inc.* (*supra*), the stepfather, having had knowledge of the existence of the child at the time he married the petitioner, is in law obligated to support the child since I find as a matter of fact that the child is likely to become a public charge. That, regardless of the fact that the child was born out of wedlock.

An application may be made by the respondent for a modification of this order if and when the petitioner is no longer industrially incapacitated and is in a position to find employment.

In so far as the responsibility to support the child is concerned, I find that the respondent is to pay the sum of six dollars weekly towards its support. When the petitioner is again able to support herself, the order may be modified accordingly.