ANONYMOUS, Petitioner, *v.* SIX ANONYMOUS, Respondents.

Domestic Relations Court of New York, Family Court Division, Bronx County, January 29, 1940.

*Louis A. Weissman,* for the petitioner.

*Francis V. Goggins,* for the respondent No. 3.

SICHER, J.   The petition herein was filed on January 2, 1940, by a father, now seventy-six years old, against his six children, all mature adults.

The enumeration of the powers conferred on the Family Court Division specifically includes the power: " (9)To require the support by those legally chargeable therewith of a dependent adult who is unable to maintain himself and is likely to become a public charge." (Dom. Rel. Ct. Act, § 92, subd. 9.)

That particular function is defined also in subdivision 4 of section 101 of such enabling statute, as follows: " The parents, the grandparents, the children and the grandchildren of a dependent person over seventeen years of age, who has been a resident of the city at any time during the twelve months preceding the filing of the petition for his support, and who is unable to maintain himself and is likely to become a public charge are hereby declared to be severally chargeable with the support of such poor relative.   The court shall determine and apportion the amount that each such person shall be required to contribute, as may be just and appropriate in view of the circumstances of the case and their respective means." (Dom. Rel. Ct. Act, § 101, subd. 4.)

A like legislative policy is expressed in section 125 of the Public Welfare Law, reading in part:

" Liability of relatives to support.   The husband, wife, father, mother, grandparent, child or grandchild of a recipient of public relief or of a person liable to become in need of public relief shall, if of sufficient ability, be responsible for the support of such person."

And the above-excerpted subdivision 9 of section 92 of Domestic Relations Court Act of the City of New York goes on to provide:

" Evidence that he is without means shall be presumptive proof of his liability to become a charge upon the public and the respondent shall be deemed to be of sufficient financial ability to contribute to his support unless the contrary shall affirmatively appear to the satisfaction of the court or a justice thereof; the court to determine and apportion the amount that each such relative shall be required to contribute, as may be just and appropriate in view of the circumstances of the case."

It has been recently written that " Until the midnineteen-thirties a prevailing climate of opinion considered relief a degrading charity. Relief today is still felt to be some excrescence on the social order but nonetheless a responsibility and duty of society." (Alien and Public Charge Clauses, 49 Yale L. J. 22.) Still, despite such undoubted trend, under normal family conditions adult children of the group and status of these respondents might fairly be expected to have a sense of pride about keeping both their parents off the dole. But under the particular circumstances here presented, these respondents bitterly and not without just reason resent petitioner's calling upon them for any measure of aid. And petitioner, in turn, would much prefer not to be beholden to his estranged issue. Indeed, both this petition and a previous one dismissed on June 6, 1938, were filed at the sole instance of the department of public welfare of the city of New York upon petitioner's applying for old age assistance. For, that department's investigation disclosed that he had six children who might possess sufficient collective means to relieve the community of the burden of his support.

Efforts to bring the parties to a voluntary agreement have been thwarted by deep-seated psychological factors.

The evidence developed and observation of petitioner upon two hearings before me explain the harsh unwillingness of his children to accept the duty of contributing to his support at even the low subsistence level of public relief budgets. For many years petitioner has gone his separate way, letting his children shift for themselves since early youth and casting off his wife into the hands of their daughter (respondent No. 3). He is a man of learning and still alert mind. But he appears self-centered and opinionative, and, despite his training in the rabbinical tradition, seems to have so ordered his long life that he now sadly lacks " That which should accompany old age, as honour, love, obedience, troops of friends."

In extenuation it may be remarked that petitioner is consistent in contending that as his offspring were begotten at his will, and not theirs, and he has failed to win their affection or respect, they should not be required to contribute to his support but that burden should fall upon the community.

Of course, the short and sufficient answer to the views of petitioner and respondents is that the Legislature has clearly declared a different public policy, which is binding upon the parties and this court.

A like petition was dismissed in this court on June 6, 1938, at the conclusion of petitioner's testimony, upon the ground that the justice then presiding was not satisfied that petitioner was at that time likely to become a public charge. But that dismissal is not *res adjudicata*. The financial condition of a person seeking support, as well as that of the persons chargeable with such support, may change, and this court, therefore, has the necessary power to make or modify support orders in accordance with the facts shown from time to time. (*Matter of Wignall* v. *Wignall*, 163 Misc. 910.)

I have had read to me the minutes of the June 6, 1938, hearing and note certain intervening changes of circumstances: (1) Petitioner then still lived in premises —— T———— avenue and had not yet been divested of the legal title to that real estate, although the Home Owners Loan Corporation mortgage on it was then in process of foreclosure and petitioner has since been ousted of possession as well as title; (2) on June 6, 1938, he testified, he then still had a " library at home, quite expensive;" but that library has since been sold and brought only a nominal price; (3) petitioner's meagre earnings from funeral and wedding services have doubtless still further dwindled. He is now nearly two years older; his own generation has passed; he radiates no kindliness nor spirituality; and he has not been attached to any congregation since 1919, when he resigned a rabbinical post to embark upon an eventually ruinous career as a real estate operator.

And there was testimony before me to the effect that since June, 1938, he has lived largely upon the bounty of fraternal lodges and on the proceeds (now exhausted) of the sale of his family cemetery plot.

So I find as a matter of fact and of statutory presumption that at this time petitioner is a " dependent adult who is unable to maintain himself and is likely to become a public charge."

Accordingly, I am constrained to enter an order against respondents in an aggregate amount approximately equivalent to the sum which petitioner might otherwise collect from the old age assistance division of the department of public welfare of the city of New York (*i. e.*, about thirty dollars a month), less, however, the sum of ten dollars a month as the estimated amount of petitioner's probable average present and future income from his own efforts. Moreover, that net allowance will nearly conform to the sum which petitioner informed the probation officer interviewer of this court would enable petitioner to carry on.

On consent of the four respondents who are now before this court, this proceeding is reserved generally against respondent No. 2 and respondent No. 5, for the reason that each of them resides out of this State and no jurisdiction has been acquired over them; and as against respondent No. 6, because she is at present unemployed and is herself in need. So, the whole burden at this time must be apportioned among respondents Nos. 1, 3 and 4.

As respondent No. 3 has greater financial ability than either of her brothers, I must impose on her a larger share of that burden. I do so reluctantly, recognizing that she is thereby in a sense penalized for her industry, frugality and sounder management and that she is maintaining a home also for her mother (petitioner's wife). However, the evidence establishes that she has a regular salary of $2,400 per annum as a New York city civil service employee (less pension deductions) and supplemental income which may be fairly estimated as a likely minimum of $500 a year.

Respondent No. 4 is a struggling lawyer of uncertain and negligible income. However, he is married and childless and his wife has earning capacity, and between them they manage to maintain a home and he a law office desk space.

Respondent No. 1 is rather vague about the nature and extent of his income, and he may not have been entirely frank with the court. However, it at least appears that he is childless, that he and his wife reside in an elevator apartment building in a fairly prosperous neighborhood, that he was at one time a flourishing motion picture producer, that he now sells motion picture film on commission, and that he is still a man of fluent address and good appearance. So, I must find that he has not overcome the statutory presumption that a " respondent shall be deemed to be of sufficient financial ability to contribute " to petitioner's " support unless the contrary shall affirmatively appear to the satisfaction of the court or a justice thereof."

For the foregoing reasons, I direct that the following-named respondents shall pay into this court the following sums of money, in each and every week, commencing February 5, 1940, for the support of petitioner, until further order of this court: Respondent No. 1, one dollar and fifty cents a week; respondent No. 3, three dollars a week; and respondent No. 4, fifty cents a week.

If it be more convenient for any respondent to remit larger lump amounts, instead of these trifling weekly sums, each is permitted to do so, provided that each payment at all times at least equals the amount which shall have accrued against the respective respondent under this weekly order at the time of the respective remittance.

It is, therefore, suggested, but not directed, that for convenience of remittance, and as a safeguard against defaults during lean income periods, each respondent should endeavor to deposit with this court excess sums over the respective weekly order requirements; any such excess to be received by the cashier for that purpose and be paid out against the current order, when and if otherwise the respective respondent would fall in arrears. Any such excess deposit may be made without prejudice and shall not be deemed evidence of the respective respondent's ability to contribute more than the respective weekly sum hereby allowed nor shall it be referred to or constitute evidence in any subsequent proceeding for increase or decrease of the respective weekly allowances hereby ordered.

Application for modification may be made if (1) petitioner is able to prove by competent and credible evidence that his monthly other income over a period of at least four consecutive months has averaged less than ten dollars a month; or, conversely, (2) if any respondent is able to prove by competent and credible evidence that petitioner's monthly other income over a period of at least six consecutive months has averaged more than ten dollars a month; or (3) any other material change of circumstances sufficient, in the absence of the foregoing express provisions, to entitle any party to apply for an increase or decrease or other modification of today's order pursuant to the customary practice of this court.

Four copies of this memorandum are being filed with the original, and the clerk of this court is hereby directed to mail one copy to the attorney for petitioner, one copy to the attorney for respondent No. 3, and one copy direct to respondent No. 1 and respondent No. 4.