" Isaac Mendelsohn ", Petitioner, v. " Benjamin Mendelsohn " et al., Respondents.*

Domestic Relations Court of the City of New York, Family Court, Bronx County, April 30, 1948.

---

\* The opinion as filed sets forth the true names of all parties but as here published ·substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the New York City Domestic Relations Court Act (L. 1933, ch. 482, as amd.).

" *Isaac Mendelsohn* ", petitioner in person.

" *Benjamin Mendelsohn* " and others, respondents in person.

SICHER, J. In this proceeding, instituted nominally by a sixty-seven year old father, the real party in interest is the Department of Welfare of the City of New York, seeking exoneration from the cost of maintaining respondents' father, who has for several months been a " public charge " dependent on Old Age Assistance and since about March 1, 1948, an inmate of " X " Old Folks Home.

" Indigent parents of advanced years are ordinarily cared for within the family group. A ' poor relative ' proceeding in this Court is almost always symptomatic of atypical conditions * * *." (*Neuerstein* v. *Newburger,* 53 N. Y. S. 2d 906, 908, 909.) Thus, the instant proceeding stems partly from resentment of respondents " Benjamin Mendelsohn ", " Saul Mendelsohn " and " Naomi Mendel " against their father for his neglect and disinterest during their childhoods and partly from their hostility against respondent " Deborah Mendelsohn ", their stepsister, petitioner having married three times.

What the respondents must grasp is that the Legislature has imposed upon adult children the duty *to the community* to save the general public the cost of supporting an aged parent, however personally undeserving, who is unable to maintain himself. That is a statutory duty which respondents must discharge and the court enforce as one of the incidents of living under a democratic government of law.

Inasmuch as the duty is to the community, the fact that the father may have in the past favored one child over the others (so as to increase that child's *moral* obligation to sustain him in his old age) has no relevance to the *legal* issue of the *present* needs of the parent and of the *present* proportionate financial ability of each child to contribute now.

Because of the unworthiness of the petitioner father, his evasiveness, and the possibility that he had hidden assets I deferred entering orders against any respondent upon the initial September 26, 1947, hearing pending further investigation and the production of certain witnesses before me.

Through the diligent efforts of Probation Officer Rose Patrissi and Welfare Centre 40 the facts have now been fully developed.

Petitioner " Isaac Mendelsohn " first became known to this court on May 8, 1947, when he called to ask that his children, particularly " Deborah ", be each required to contribute $5 a week to his support, claiming to be without means except for a Federal social insurance monthly benefit of $28.80, and that he had earned nothing since 1946.

A May 21, 1947, Intake Conference with petitioner and his daughters " Deborah " and " Naomi " brought out that petitioner still owned a 1940 Packard car; and Justice COBB therefore directed that no petition be taken then, since petitioner was not at that time likely to become a public charge.

The soundness of 'that ruling appears from the subsequent sale of that car and petitioner's June 16, 1947, deposit of $700 as the net proceeds of such sale in a located bank account.

Nevertheless, petitioner returned again to this court on September 9, 1947, claiming that said $700 were nearly exhausted and that he had become a recipient of old age assistance from the department of welfare of the city of New York.

Accordingly, after his children disregarded notices for another conference, a " poor relative " petition was accepted on September 17, 1947, and summonses were issued by the clerk of the court against the four respondents, returnable September 26, 1947.

On that last-mentioned date there was a hearing, attended by petitioner and the four respondents, which developed that petitioner had allegedly used up the aforesaid $700 in extravagant living expenses and had begun to collect from the old age assistance division of the department of welfare of the City of New York $45.95 per month to supplement his Federal security monthly benefit of $28.80.

Such hearing further developed that the collective means of the respondent children are such that the burden of the support of their father should be wholly lifted from the taxpayers and carried by them. But there still remained a doubt whether petitioner had in fact exhausted the $700 and might still be in possession of that or other assets sufficient to main-

tain himself without contribution from his children or the department of welfare.

However, another full hearing on March 12, 1948, established that he had in actual fact become a public charge, having begun to be an inmate of the " X " Old Folks Home under an arrangement whereby his Federal social insurance monthly benefit of $28.80 would be turned over to that home and he be maintained there on payment, by department of welfare of the city of New York or his legally chargeable relatives, of the further (deficit) sum of $36.95 a month.

For the reasons appearing in this memorandum the department of welfare of the city of New York declines to continue to assume that deficit and properly asks that it be supplied by the respondent children under the orders of this court which are being entered simultaneously with the filing of this opinion.

The Legislature has conferred upon the Family Court Division of this court exclusive " Jurisdiction within the city to hear and determine all proceedings to compel the support of a * * * poor relative " (N. Y. City Dom. Rel. Ct. Act, § 91, subd. [1]).

The following are pertinent provisions of that enabling statute (the Domestic Relations Court Act of the City of New York): " § 92. *Powers.* In the exercise of its jurisdiction the court shall have power *. * * (9) To require the support by those legally chargeable therewith of a dependent adult who is unable to maintain himself and is likely to become a public charge; the court to determine and apportion the fair and reasonable sum that each such relative shall be required to contribute, as may be just and appropriate in view of the needs of the petitioner and the other circumstances of the case."

The particular function described in subdivision (9) of section 92 of the Domestic Relations Court Act is further defined in subdivision 4 of section 101 of the Domestic Relations Court Act, as follows: " 4. The * * * children of a dependent person over seventeen years of age, who has been a resident of the city at any time during the twelve months preceding the filing of the petition for his support, and who is unable to maintain himself and is likely to become a public charge are hereby declared to be severally chargeable with the support of such poor relative. The court shall determine and apportion the fair and reasonable sum that each such person shall be required to contribute, as may be just and appropriate in view of the needs of the petitioner and the other circumstances of the case and their respective means."

Other pertinent sections of Domestic Relations Court Act of the City of New York are:

'' § 102. *Punishment for failure to support.* A person chargeable with the support of another as provided in section one hundred and one who fails to provide such support is guilty of non-support and may be punished by imprisonment in jail for not exceeding twelve months.''

'' § 103. *Residential Jurisdiction.* 3. A * * * child * * * of a dependent person over seventeen years of age who shall have been a resident of the city at any time during the twelve months preceding the filing of the petition for his support may be required to furnish support or may be found guilty of non-support, as provided for in the two preceding sections, if, (a) such * * * child * * * is residing or domiciled in the city at the time of the filing of the petition for support ''.

'' § 131. *Presumptions.* * * * a respondent shall prima facie, be presumed to have sufficient means to support his * * * parent * * * and a dependent adult without means to maintain himself shall be presumed to be likely to become a public charge.''

'' § 138. *The city as a party.* The city may in any case where a person is likely to become a public charge, file the petition in an action for support.''

'' § 139. *Bond for support* * * *. If a bond for support be required of the respondent * * * the condition of the undertaking shall be for his future compliance with the court's order for support, * * * or in default thereof that the surety will pay to the clerk of the court a specified sum as therein set forth. Instead of entering into such an undertaking a respondent may deposit money in an amount to be fixed by the court.''

'' § 151. *Undertaking for support.* The court may require the respondent to give to the clerk a written undertaking with sufficient surety approved by the court that the respondent will abide by the order for support. Such undertaking shall be for a definite period, not to exceed three years, and the required amount of the principal of such undertaking shall not exceed the total payments for support required for three years and shall be stated in the order for support. The respondent may deposit such sum in cash with the clerk. The court may in its discretion require either such written undertaking with sufficient surety approved by the court or may require that cash be posted to secure compliance by the respondent with the order for support for such period. In the event that the respondent shall fail to

make any payment, when due, within such period, payment shall be made to the petitioner out of such cash."

" § 154. *Default*. A default in the terms of the order shall constitute a breach of the undertaking."

" § 58. *Appeals*. An appeal may be taken to the appellate division of the supreme court of the appropriate judicial department by any party to the proceeding from any final order or judgment of the court, within thirty days after the entry of said order or judgment, and the provisions of article thirty-seven and article thirty-nine of the civil practice act shall relate to appeals hereunder insofar as such provisions may be practically applied thereto. * * * All notice of or in connection with appeals shall be served upon the presiding justice and upon the corporation counsel as well as upon such respondent or his attorney. * * * In family court cases the appeal shall not operate as a stay of proceedings in respect to the order and no stay shall be granted, unless the appellant deposits with the clerk of the court from which the appeal is taken the sum of two hundred and fifty dollars in cash, which may be applied to the support of the petitioner during said appeal, or unless he give sufficient surety by a written undertaking approved by a judge of the appellate court, that during the pendency of such appeal he will pay the amount directed to be paid to the family court for the support of the petitioner. A failure to make such payments· automatically vacates such stay. If a new trial is ordered it shall be had in the domestic relations court. No costs shall be awarded to either party on an appeal from a decision of the family court."

The foregoing provisions of law have been quoted at length primarily for the information of respondents, so that each of them may be fully apprised as to his or her legal rights and obligations and the serious consequences of any willful default in compliance with any support order of this court.

Respondents are also hereby apprised that the public policy expressed by the State Legislature in the above-quoted subdivision (9) of section 92 and subdivision 4 of section 101 of the Domestic Relations Court Act is mandatory, and, therefore, binding upon the parties and this. court notwithstanding the neglect of respondents by their father. (See *Spenser* v. *Spenser*, 41 N. Y. S. ·2d 887; *Anonymous* v. *Anonymous*, 173 Misc. 244.) Unlike some other States, in New York there is no statutory provision which relieves otherwise legally liable relatives from the duty of indemnifying the public against the burden of main-

taining a "poor relative" whose conduct has forfeited all moral claims against them (see *Matter of Kittell [Garrison]*, 171 Misc. 983, 986). The court can understand respondents' resistance to the father's petition. But there exists no discretionary power to excuse respondents on the ground of their father's personal unworthiness. Despite the contrary view voiced in *Matter of Houg* v. *Houg* (159 Misc. 894) and *Matter of Kittell* (*supra*, 171 Misc. 983), it seems unquestionable that subdivision (9) of section 92 and subdivision 4 of section 101 of the Domestic Relations Court Act are mandatory (see *Anonymous* v. *Anonymous*, 173 Misc. 244, 247, *supra*; 25 Corn. L. Q. 300–303); as above stated, in New York, as between the community and adult children; upon the latter is cast the burden of supporting a needy parent, however personally undeserving he may seem to them or may actually be. The cruel hardships of indigent old age must be ameliorated by one's children if of sufficient ability, and only secondarily and in default of such ability out of public funds.

No useful purpose would be served by a detailed narrative of the voluminous oral and written evidence. Suffice it to recite only certain salient facts and inferences and to state that *all* the evidence (including demeanor) has been earnestly considered in reaching today's decision.

(There are here omitted the next following paragraphs of the opinion reciting the facts underlying the court's finding that petitioner is now without assets and actually a public charge.)

It remains only to apportion among the respondents, pursuant to the above-quoted subdivision 4 of section 101 of the Domestic Relations Court Act, the burden of indemnifying the community against the cost of petitioner's current maintenance as an inmate of "X" Old Folks Home, namely $36.95 a month since March 1, 1948.

(There are here omitted the next following portions of the opinion dealing with the particular facts of the bases of the following support orders.)

For the foregoing reasons the court finds that respondents 1, 2, and 3 are chargeable with support as alleged in the petition, and those respondents are hereby ordered and directed to pay into this court the sum of money for such period, and beginning on the date set opposite each respective name, as follows:

| Name | Amount | Effective Date |
|------|--------|----------------|
| 1, "Benjamin Mendelsohn" | $11.15 monthly, | May 3, 1948 |
| 2, "Deborah Mendelsohn" | 4.30 monthly, | May 3, 1948 |
| 3, "Saul Mendelsohn" | 21.50 monthly, | May 3, 1948 |

each and every month for the support of petitioner; and the support bureau is hereby directed to remit each such deposit, before the end of the respective month, to '' X '' Old Folks Home.

*In addition*, to reimburse the department of welfare of the city of New York for the $36.95 which it has paid said '' X '' Old Folks Home for petitioner's care there during each of the months of March and April, 1948, those respondents are hereby ordered and directed to pay into this court the *further* sums of money, on the indicated dates, set opposite each respective name, as follows:

1, '' Benjamin Mendelsohn ''— $5.58, May 3, 1948; again on June 7, 1948; again on July 5, 1948; and again on August 2, 1948;
2, '' Deborah Mendelsohn ''— $2.15, May 3, 1948; again on June 7, 1948; again on July 5, 1948; and again on August 2, 1948;
3, '' Saul Mendelsohn ''—$10.75, May 3, 1948; again on June 7, 1948; again on July 5, 1948; and again on August 2, 1948;

each of such *additional* deposits, in the aggregate of $73.90, the support bureau is hereby directed to remit to the department of welfare of the city of New York as and when received as reimbursement.

When and if respondent 4 becomes able to contribute, or upon proof of any other material change of circumstances, in respect of any respondent or the petitioner, which would justify modification or suspension of any of the foregoing orders, appropriate proceedings may be had in accordance with the rules and practice of this court.

Much time and thought have been devoted to the hearings and to formulation of today's decision; each respondent is therefore hereby again cautioned that failure to comply with the respective order entered herewith, unless occasioned by a true and bona fide cause, not within his or her control, may result in a bond or a workhouse commitment pursuant to the above-quoted provisions of the Domestic Relations Court Act of the City of New York.

Notice shall be given to the parties pursuant to the subjoined direction.