VIVIAN HOGEBOOM, Complainant, *v.* ROBERT HURLBURT, Defendant.

Children's Court, Broome County, June 9, 1955.

*John Sullivan* for complainant.

*Sidney Singer* for defendant.

THOMAS, J. The complainant's undisputed and uncorroborated testimony is to the effect that she became acquainted with the defendant in August of 1953, and began keeping company with him sometime after January 13, 1954; that within a reasonable time after the latter date she began having sexual intercourse with him and continued to do so frequently thereafter; that they occupied the same room in the home of one Rex Hurlburt at Quinneyville for a certain period of time and later

had an apartment on Highland Avenue in the city of Binghamton which was occupied by herself and the defendant, Robert Hurlburt, for several weeks; that she later moved to an apartment in Johnson City in which she resided with a sister of the said defendant and where she continued to have relations with the defendant; that the acts of intercourse were carried on from two to more times a week all during this period and that in the month of July, 1954, she discovered that she was with child. Complainant testified further that in May, she had intercourse with the defendant on the 1st, 5th, 6th, 7th, 19th, 20th, 21st, 22d, 23d and 25th days, and claims that the conception took place during this period, as her last menstrual period began about May 7th, and lasted for about three days. Complainant further testified that she had intercourse with no other man during the month of May, 1954, or the period that she was going with the said Robert Hurlburt.

The sole defense of the defendant was evidence of his sterility as testified to by his family physician, Dr. A. M. Torrence, and Dr. Herbert Bandell, who made an examination of the defendant in the month of May, 1955. The defendant, himself, did not take the stand to make any denial of the complainant's testimony. Dr. Torrence testified that he had known the defendant for about twenty years and had been his family physician, and that he had examined him on different occasions and that he had examined him the last time within about two weeks of the date of trial. Dr. Torrence stated that the defendant's right testicle was undescended; that the left was small; and that this condition had existed according to the defendant's medical history back to his schooldays and his adolescence, during which time Dr. Torrence had the record of the conditions.

Dr. Bandell testified that the examination of the defendant in May, 1955, disclosed that the right testicle of the defendant was undescended and that the left testicle was about half the normal size and softer than normal; that a semen analysis was done at the medical laboratory at 87 Main St., Binghamton, N. Y., which revealed the total volume of 3 cc. with normal viscosity and turbidity; that the sperm count was 1,200,000 per cc., or a total sperm count of 3,600,000; that the sperm appeared normal; that the motility was poor, both initially and one hour later. There were very rare *motal sperm*. Dr. Bandell further testified that the undescended testicle, he felt, was present from the time of birth, so that on the right side the testes has always lacked the ability of spermatogenesis. Dr.

Bandell stated that he believed the defendant to have been sterile since adolescence, and quoted in support of his contention, several medical authorities.

In filiation cases the law is clear that the testimony of the complainant does not have to be corroborated, but it has been so often said that the charge is so easy to make and so hard to defend, that there should be sedulous scrutiny of the record. In a proceeding of this kind, by reason of the fact that the charge is so easily made and so difficult of a satisfactory answer by the defendant, and the resulting consequences of conviction so serious, the courts have laid down the rule that the proof must be entirely satisfactory, which does not mean that the proof be beyond a reasonable doubt, but does require evidence sufficient to create a genuine belief in the mind of the trier of the facts, that the defendant is the father of the child. If such belief is not established to the entire satisfaction of the court by reason of the testimony of the witnesses and by reason of other circumstances, then the complainant must be deemed to have failed in establishing the charge made.

The undisputed expert testimony disclosed that the sperm count of the defendant at the time of his examination in May, 1955, was only a total of 3,600,000 per 3 cc. and that this condition had existed since his adolescence; that the average normal human ejaculation of 3 cc. has sperm count of 361.5 million; that medical authority seems to be clear that amounts less than 180,000,000 per 3 cc. are not likely to cause pregnancy and the man is deemed to be relatively infertile. (Schatkin on Disputed Paternity Proceedings, pp. 542–545.)

The defendant, according to the record, having a sperm count of only 3,600,000 per 3 cc. with normal viscosity and turbidity, and having poor motility, would be strong if not controlling evidence, that the defendant is not the father of the child born to the complainant on February 24, 1955.

The motion of the defendant's attorney for dismissal of the complaint should be granted, and an order to that effect may be presented for signature.