John D. Bennett, S.
The executrix has petitioned for the judicial settlement of her account.
The Department of Public Welfare has presented a claim against the estate for assistance rendered to the decedent’s husband between the period of April 1, 1953 and December 12, 1955, the date of death of the decedent. The executrix rejected the claim “ because she doubts the justice and validity of same”.
The testimony at the hearing showed that the decedent and her husband were married in 1940; that they lived together for short periods for about a total of seven or eight months during the first few years of the marriage, and that he then disappeared for about 10 years, after which the family was informed that he had been picked up for vagrancy; that he never contributed to the support of the family; that he 1 ‘ never held a job or anything ”, and that during the few months that he did live with the decedent, ‘1 whatever she had he would take from the house ”.
On these facts the executrix rejected the claim and now urges that the decedent’s estate is not liable to the Department of Public Welfare for the assistance given the husband. On the other hand, the claimant contends that the statutory obligation of a wife to support her husband as contained in sections 101 and 104 of the Social Welfare Law is absolute, and that there is no exemption from its application because of the misconduct of the spouse.
*120 Section 101 (subd. 1) of the Social Welfare Law provides that a “ wife * * * of a recipient of public assistance or care * * * shall, if of sufficient ability, be responsible for the support of such person ”. Section 104 of the Social Welfare Law provides that ‘ ‘ A public welfare official may bring action against * * * the estate # * * of a person who dies leaving real or personal property, if such person, or any one for whose support he is or was liable, received assistance and care during the preceding ten years This section was amended to provide that no claim of a public welfare official against the estate or the executors of the estate “ shall be barred or defeated, in whole or in part, by any lack of sufficiency of ability on the part of such person during the period assistance and care were received.” This amendment became effective April 19, 1953.
The ability of the decedent to support her husband is not in issue, as the claim of the Department of Public Welfare against the estate may not be barred or defeated because of any lack of sufficiency of ability, as provided in the amendment quoted above. The Social Welfare Law, however, is silent as to the obligation of the wife or of her estate where the husband abandoned her or was guilty of some other moral delinquency.
Sections 101 and 104 of the Social Welfare Law are derived from sections 125 and 128 of the Public Welfare Law (enacted in 1929 [L. 1929, ch. 565]) which, as far as they are here applicable, contained almost identical language. Similar provisions were contained in the Poor Law of 1896. Section 914 of the Code of Criminal Procedure reads almost precisely as does subdivision 1 of section 101 of the Social Welfare Law as above quoted. The provisions of section 914 of the Code of Criminal Procedure were derived from the Revised Statutes (Rev. Stat. of N. Y., part I, ch. 20, tit. I, § 1) date back to the 19th century, and have been said to be the same as those prescribed by the Statutes of 43 Eliz. I and 5 Geo. I. (Matter of Condon, 198 F. 947 [1912], affd. 209 F. 800.) Similar provisions may be found in sections 24 and 79 of the Mental Hygiene Law; section 926-b of the Code of Criminal Procedure (cf. Matter of Makowski, 7 Misc 2d 808); section 101 of the Domestic Relations Court Act and Uniform Support of Dependents Law (L. 1949, ch. 807, § 3, as amd.). The Court of Appeals has stated: ‘ ‘ The statutes above referred to must be read together. The intent and purpose of the legislative commands must be found from the statutes relating to the same general subject-matter taken as a whole. (Seligman v. Friedlander, 199 N. Y. 373.) The same words cannot mean one thing in the Domestic Relations Law and have an entirely different meaning in the *121 Public Welfare Law, the Domestic Relations Court Act of New York City and the Code of Criminal Procedure, unless such an intent on the part of the Legislature is clearly expressed.” (Betz v. Horr, 276 N. Y. 83, 88.)
The decisions on the question in issue appear to be in conflict. In Matter of Houg v. Houg (159 Misc. 894) the Domestic Relations Court denied an application to require a husband to support his wife because of her immoral conduct, even though she was likely to become a public charge. However, the court candidly said: “As a cold legal proposition, probably the court should make an order in this case requiring the respondent to contribute to the support and maintenance of the petitioner.” However, the same court in Jones v. Jones (161 Misc. 660) held that the obligation of a husband to support his wife survived her abandonment of him if she is or was likely to become a public charge, and in Hodson v. Picker (159 Misc. 356) held that a wife was responsible for the support of her husband, even though they were separated, and even though the separation was his fault.
In Matter of Kittell [Garrison] (171 Misc. 983) a County Court denied an application by the Commissioner of Public Welfare of Columbia County to compel a wife of a recipient of public relief to support him where the husband had abandoned his wife for a period of 23 years.
The court in “Mendelsohn” v. “Mendelsohn” (192 Misc. 1014) ruled that the obligation of a son to support his indigent father was absolute and could not be excused because of the moral failings of the father. This court held that the enforcement of the obligation was not discretionary but mandatory upon the court. At pages 1019 to 1020, the court said: “ Respondents are also hereby apprised that the public policy expressed by the State Legislature in the above-quoted subdi: vision (9) of section 92 and subdivision 4 of section 101 of the Domestic Relations Court Act is mandatory, and, therefore, binding- upon the parties and this court notwithstanding the neglect of respondents by their father. (See Spenser v. Spenser, 41 N. Y. S. 2d 887; Anonymous v. Anonymous, 173 Misc. 244.) Unlike some other States, in New York there is no statutory provision which relieves otherwise legally liable relatives from the duty of indemnifying the public against the burden of maintaining a poor relative whose conduct has forfeited all moral claims against them (see Matter of Kittell [Garrison], 171 Misc. 983, 986). The court can understand respondents’ resistance to the father’s petition. But there exists no discretionary power to excuse respondents on the ground of their father’s *122 personal unworthiness. Despite the contrary view voiced in Matter of Houg v. Houg (159 Misc. 894) and Matter of Kittell (supra, 171 Misc. 983), it seems unquestionable that subdivision (9) of section 92 and subdivision 4 of section 101 of the Domestic Relations Court Act are mandatory (see Anonymous v. Anonymous, 173 Misc. 244, 247, supra; 25 Corn. L. Q. 300-303); as above stated, in New York, as between the community and adult children; upon the latter is cast the burden of supporting a needy parent, however personally undeserving he may seem to them or may actually be. The cruel hardships of indigent old age must be ameliorated by one’s children if of sufficient ability, and only secondarily and in default of such ability out of public funds.” (See, also, “ Posner ” v. “ Posner”, 201 Misc. 432 and “ Lebolt ” v. “ Lebolt ”, 200 Misc. 704.)
For the court to allow the claim here makes this a “ hard case ’ ’ and a disturbing one. The reluctance to arrive at such a result, however, must yield before the direction implicit in the language of the Court of Appeals in People v. Schenkel (258 N. Y. 224, 227-228): “In this State the penal statute leaves no discretion to the courts. A person is 1 disorderly ’ who leaves wife or children in danger of becoming a burden upon the public or who neglects to provide for them according to his means. Duty of provision is absolute and regardless of the wife’s fault. The public interest, in the opinion of the Legislature, requires that the husband, not the taxpayer, shall bear the burden of her support as long as the relationship of husband and wife is not altered or dissolved by decree of the court. * * * Whether the obligation of maintenance continues after the wife has been guilty of adultery is not now before us. ( See Jones v. Guardians, etc., supra.) Perhaps even there the ancient rule has been changed, and only dissolution of the marriage relation can destroy its incidents. (Cf. Real Prop. Law [Cons. Laws, ch. 50], § 196; Dec. Est. Law [Cons. Laws, ch. 13], § 87.) ”
The language of the Court of Appeals is equally applicable where the duty of maintenance is imposed upon the wife. In Hodson v. Stapleton (248 App. Div. 524, 525) the court said: “ Of course, it has always been the husband’s duty to support his wife, even in the absence of statute. (Goodale v. Lawrence, 88 N. Y. 513.) But at common law there was no corresponding duty on the part of the wife. (Young v. Valentine, 177 N. Y. 347.) However, it cannot be denied that there exists a moral obligation on the wife, if she has the means, to support her husband when he is in need. It is that obligation which the *123 statute (§§ 125, 128), in the public interest, has transformed into law. As between the wife and the State, the support of the husband is primarily the responsibility of the wife. If the State discharges her obligation, it is not unreasonable that the State should be reimbursed by her for the expenditure. Nor is it true that the statute is retroactive even though applicable to marriages contracted previously, for it does not create any liability for relief received before the enactment' of the law. It merely attaches a new incident to the marriage relationship.”
Considerable significance should be attached to the fact that when subdivision 1 of section 101 of the Domestic Relations Court Act was amended (L. 1950, ch. 786, § 3) no exculpatory matter was inserted or condition attached to the duty of a wife to maintain her husband because of a breach of his marital duties. The sentence added read: “A wife is hereby declared to be chargeable with the support of her husband who is or is likely to become a public charge, and, if possessed of sufficient means, may be required to pay such sum, or any part thereof, as may be necessary to prevent his being or becoming a public charge.” So, too, no such condition was inserted when section 3 of chapter 807 of the Laws of 1949 was recently amended by chapter 289 of the Laws of 1955. There the sentence merely read: “(e) Wife liable for support of her husband if he is incapable of supporting himself ”. Had it been the Legislature’s intention to excuse a wife (or her estate) from supporting her husband because of his immoral or unconscionable actions, the Legislature could have added this to the conditions found in the amendment. Its failure to do so in this court’s opinion should be called to its attention so that “ hard cases ” such as this need not continue to occur.
It is with considerable reluctance that the court holds that the claim of the Department of Public Welfare must be allowed.
In all other respects the account will be settled as filed.
At the hearing the court approved the claim of the executors in the sum of $804 for funeral expenses.
Submit decree on notice.