Richard J. Sherman, J.
The trial of the above-entitled filiation proceeding was had before me on September 21, 1961.
At the conclusion of the trial, the respondent moved to dismiss the proceeding on the ground that complainant failed to offer any proof that the subject child is or is likely to become a public charge or that the mother of the subject child is dead or under a disability. The respondent contended that the authority for the motion was in Matter of Bancroft (276 App. Div. 485 [1950]).
The affidavit of the mother, in support of the Commissioner’s complaint, annexed thereto and filed, was verified on May 2, 1961. It contains her sworn statement that “ your deponent has no means or money of her own sufficient to meet the expenses and that she and her child are likely to become public charges on the County of Saratoga.” The complaint herein, executed *608 and verified by Joseph V. Gemmiti, as Saratoga County Commissioner of Public Welfare, on the same date, May 2, 1961, contained a similar allegation.
The proceedings were adjourned from time to time by reason of various motions, such as blood-grouping tests (granted), preparation for trial, etc.
The sole object of article 8 of the Domestic Belations Law is to provide a means for determining who owes duty of support for the illegitimate child. This was holding in the Bancroft case (276 App. Div. 485, supra).
The father is responsible with the mother, jointly and severally, for the support and education of an illegitimate child. (Jones v. Jones, 161 Misc. 660.)
The Bancroft case (supra) merely determined that a proceeding to compel a father to support and educate an illegitimate child must be brought by the mother or her personal representative.
Subdivision 1 of section 122 of the Domestic Belations Law reads in part as follows: “A proceeding * * * may be
brought by the mother, or her personal representative, or, if the child is or is likely to become a public charge on a county, city or town, by a public welfare official of the county, city or town where the mother resides or the child is found. ’ ’
In Commissioner of Public Welfare of City of N. Y. ([Connell] v. McDonald, 246 App. Div. 831), the sole question was one of jurisdiction, not applicable to the present case.
In Saratoga County Comr. of Public Welfare v. “Waters” (205 Misc. 1004) cited by the respondent, the question pertained to access on the part of the husband and the court held that the evidence was not sufficient to establish that the child was illegitimate. This case has very little bearing insofar as the present case is concerned.
Two other citations in the memorandum of the respondent: Hogeboom v. Hurlburt (207 Misc. 997) on the question of sterility and People ex rel. Lawton v. Snell (216 N. Y. 527) have no particular application. The latter case was decided upon the question of commitment and was based upon the former provisions of the Code of Criminal Procedure.
It will be necessary to review the testimony to some extent. Dorothy Blaine Phillips, the mother of the child born out of lawful wedlock, testified that the child was born to her on April 12, 1961, in the Memorial Hospital in Albany, Hew York. She claims to have met respondent in July of 1960 and that she had intercourse with him shortly after the first week of July, 1960 and more or less continuous intercourse with him until the first *609 week in September, 1960 at which time she left for school in Albany. She further testified that her menstrual periods continued until February of 1961. However, in November of 1960 her mother accused her of being pregnant. In December of that year, during the Christmas vacation, she was attended by Dr. Grace Maguire Swanner who directed her to have certain tests made at the Saratoga Hospital and that as a result of the said tests the said Dr. Swanner determined that she was pregnant.
Dorothy Phillips returned to school in Albany on September 11,1960. She stated that during the months of July and August, and at least in the first week in September, she had sexual intercourse with the respondent. She met him at a nightclub where the respondent was working. She was then living in a rooming house at 11 Woodlawn Avenue, Saratoga Springs, New York, separate and apart from her parents. Her testimony is to the effect that the respondent usually came to her room after he got through work at 3:00 a.m. and stayed the rest of the night and that he would sometimes visit her in her room during the day. She was not sure of the date of conception because of the fact her menstrual periods had continued and it was not until December, 1960, that it was finally determined that she was pregnant. She further testified that she had not had intercourse with any other man from June of 1960 to April of 1961 at which time the child was born. She further testified that she believes respondent to be the father of the said child. Her testimony was that respondent said he was unmarried and that he lived at a certain address in Albany but when she went to this address to inform the respondent about her pregnancy no one was known by that name at that address. Subsequently, respondent telephoned Dorothy Phillips, whereupon she informed him that she was pregnant and according to her testimony the respondent stated he would take care of the expenses and that she stay at school.
In January of 1961 Dorothy Phillips, accompanied by her father and mother, went to the respondent’s home and found the respondent shoveling snow at the time. Her testimony, and the testimony of her father, was to the effect that the situation was explained to respondent and that they wanted to know what he was going to do about it. According to their testimony, respondent stated he had responsibilities but he would do what he could. Later Dorothy Phillips, accompanied by her father and mother, visited at the respondent’s home at Albany but that respondent did not enter into the conversation at any time.
Dorothy Phillips definitely states that respondent is the father of the child.
*610 Miss Julia. Russell, the landlady of the rooming house at 11 Woodlawn Avenue, testified that she saw the respondent there on three different occasions and that on one occasion she heard a man’s voice in Dorothy Phillips’ room and that when she went to the room respondent had his shirt off, whereupon he was ordered out of the rooming house.
The next witness was David Phillips, father of Dorothy, who testified as to the two conversations: one with the respondent and one with the respondent’s wife, at which time the respondent was present.
In the testimony of Dorothy Phillips it appears that at the time she signed the petition she was not working and had no means or money of her own with which to pay the hospital bill; the doctor’s bill and for the support of the child. Later, and before the trial, the Commissioner of Public Welfare of Sara-toga County had given her a job as a practical nurse at the County Infirmary. Mr. George Owens, a case worker in the office of the Commissioner of Public Welfare, testified as to Dorothy Phillips’ application for welfare assistance. Dorothy Phillips testified that the following bills were outstanding: Hospital bill $265.05; Dr. Grace Maguire Swanner $5; Saratoga County Laboratory $7.50; Dr. William Hickey, for monthly checkup, $16 up to and inclusive of September 21, 1961.
The respondent stated that he was employed by the State of New York and that his salary was approximately $3,500 a year. He denied having any sexual relationships with Dorothy Phillips. He admitted that he had visited her at her rooming house on one occasion and that was when he had taken her to a movie. He further testified that he had visited at the rooming house a couple of times before he went to work which would be between 7:00 and 8:00 in the evening. He denied having seen the landlady except upon one occasion. He admitted that he had not told Dorothy Phillips that he was married.
Hospital records were offered in evidence by the respondent. The discharge sheet of the hospital records for the mother, dated April 17,1961, terms the final diagnosis as “ term birth ”. The entry in the baby’s hospital chart records the birth of the baby as “ premature ”. This is not necessarily a contradiction as a premature birth or a term birth would be covered by the period in which the said Dorothy Phillips states that she engaged in sexual relations with respondent. The discharge record had no mention “premature” and the baby was not placed in an incubator. The baby weighed 5 pounds 9 ounces at birth. No medical testimony was offered on this question, or on the *611 question of the continuance of the menstrual periods after conception.
This court has had the opportunity of viewing the witnesses upon the stand, hearing testimony and judging as to the truth thereof. The complainant has sustained his burden of proof by clear, convincing and reliable evidence or by evidence which is entirely satisfactory. (People v. Guiseppe, 97 N. Y. S. 2d 486, affd., 276 App. Div. 1102; Commissioner of Welfare of the City of N. Y. v. Nestasi, 6 A D 2d 680; Holland v. Tracy, 285 App. Div. 1197; Commissioner of Welfare of the City of N. Y. v. Pagan, 9 A D 2d 757; Commissioner of Welfare of the City of N. Y. v. Krebs, 2 A D 2d 877; Commissioner of Welfare [Treadwell] v. Rose, 283 App. Div. 781.)
There is no significance and no probative value to the omission of the alleged father’s name from the birth certificate, whether the same be in evidence or not in evidence. Furthermore, in this proceeding there is corroborative testimony by a disinterested witness who identified the respondent as a visitor to Miss Phillips.
It would be ridiculous to presume that this proceeding should be dismissed purely upon the ground that it was instituted by the Commissioner of Public Welfare of Saratoga County. The allegations contained in the petition were true at the time they were made and it is of no consequence if the said Dorothy Phillips some months later, and prior to the time of trial, succeeded in obtaining a position. It would be a travesty of justice to say that only she could bring the proceeding in her own name and thus be caught between the cross fire of litigation. There is no question in the mind of the court but that respondent is the father of the child born out of lawful wedlock to Dorothy Phillips and an order of filiation should be granted to that effect and provision made therein for the respondent to contribute to the care, support and education of the child in the amount of $5 per wreek beginning November 3, 1961, and continuing each week thereafter, such money to be paid to the County of Saratoga and paid over to Dorothy Phillips for the care, support and education of the child; and that the father further provide for the expenses in connection with the birth of the said child totaling $293.55, to be paid by the respondent to the Probation Department of the County of Saratoga at the rate of $25 per month beginning December 1, 1961, and continuing on the first of each month thereafter until the total amount has been paid and that the Probation Department pay over such moneys to the various corporations, agencies and individuals entitled thereto.