Joseph T. Pilato, J.
This support proceeding was instituted by the Director of (Social Services of Monroe County, by a petition alleging that respondent is chargeable under the Social Services Law (formerly the Social Welfare Law) of the State of New York and the Family Court Act of the State of New York with the support of his wife, Juanita Simpson, and his two stepchildren. The proceedings were authorized pursuant to section 102 of the Social Services Law and section 422 of the Family Court Act. The respondent interposed a defense of wife’s adultery acting as a complete bar to making payments to the wife as demanded in the petition. Petitioner in opposition argued that adultery was not a defense as a matter of law, when the spouse is or might become a public charge.
Subdivision 1 of section 101 of the Social Services Law provides that a ‘1 spouse * * * of a recipient of public assistance or care * * * shall, if of sufficient ability, be responsible for the support of such person ”. Section 415 of the Family Court Act reads similarly. The court in Trussell v. Kostiw (35 Misc 2d 60, 62) ruled: “ It is evident that the quoted statutes are silent as to the obligations of the wife and next of kin when the husband abandons her or is guilty of misconduct. A statute of this kind is penal in nature and the duty imposed becomes absolute in the absence of exculpatory words of exemption. The statute must, therefore, be literally construed (Matter of Cybulski, 8 Misc 2d 119; Jones v. Jones, 161 Misc. 660).”
The Matter of Cybulski (supra, pp. 120-121) the court in tracing the history of the various statutes which affect or could affect the question in issue showed that the various statutes have identical language and similar provisions in the law. The court then continues to state: “ The Court of Appeals has stated: ‘ The statutes above referred to must be read together. The intent and purpose of the legislative commands must be found from the statutes relating to the same general subject matter taken as a whole. (Seligman v. Friedlander, 199 N. Y. 373.) The same words cannot mean one thing in the Domestic Relations Law and have an entirely different meaning in the Public Welfare Law, the Domestic Relations Court Act of New York City and the Code of Criminal Procedure, unless such intent on the part of the Legislature is clearly expressed. ’ (Betz v. Horr, 276 N. Y. 83, 88.) ”
I disagree with the decisions that have interpreted adultery as a bar, such as in the Matter of Houg v. Houg (159 Misc. 894), and in the Matter of Kittell (Garrison) (171 Misc. 983), for in *1046 each case the matter was not determined on the law but on moral principles. In the Houg case, (supra), the court denied an application to require a husband to support his syphilitic wife, who was a common prostitute and had a bigamous marriage, even though she was likely to become a public charge. However, the court judicially decreed that (pp. 894-895): “As a cold legal proposition, probably the court should make an order in this case requiring the respondent to contribute to the support and maintenance of the petitioner ’ Significantly, the same court in Jones v. Jones (161 Misc. 660) held that the obligation of a husband to support his wife survived her immoral acts if she is or was likely to become a public charge.
In the Kittell case, the court denied an application by the Commissioner of Public Welfare to compel relatives to support a recipient of relief where there was a separation of the parties for upwards of 20 years. The court stated in the Kittell case (p. 987): “ It is sufficient to say that here as in the Houg case an order requiring the wife and daughter to support the recipient of relief would do violence to decent instincts, conscience and justice * * * Upon the facts here presented it is better that the public carry the burden it has assumed than that it be placed upon the respondents who have no moral responsibility. ’ ’ (Italics supplied.)
Respondent’s comments in regard to People v. Schenkel (258 N. Y. 224) are well noted. However, a reading of that case indicates that while the court does not specifically decide that the obligation of maintenance continues even after the wife has been guilty of adultery, the weight of the opinion is to the husband’s liability being an incident of the marriage requiring a termination of the marriage to destroy this incidence. In the light of the 1962 enactment of the Family Court Act, recent amendments to allied statutes and the decision of the Betz v. Horr (supra) I question whether the court in the Sehenkel case would have obiter dictum on the question of adultery. The court acknowledges that perhaps the common-law rule was changed by the statute. The statute is intended to protect the public purse effectible when the spouse is the lawful wedded husband or wife and its purpose is not defeated by the mere fact that the recipient or recipient-to-be of public assistance is of immoral character.
The research of counsel and an independent search by this court has failed to disclose a single case which is determinative of this specific objective raised by respondent since the enactment of the Family Court Act in 1962. Considerable significance should be attached to the fact that at the time of the enactment *1047 of the Family Court Act, the legislators did not insert exculpatory matters in section 415. Neither sections 415, 422 nor any related sections of article 4 of the Family Court Act, and sections 101, 102 or any related sections of article 3 of the Social Welfare Law (now Social Services Law) provide any limitation, exemption or exclusion on the question of adultery even though recent amendments of diverse sections are of as late as 1966. This court will not legislate.
Petitioner’s motion is granted, and the defense of adultery will be stricken.