J. George Follett, J.
The issue presented in this case is whether or not the father of a 20-year-old young woman who chooses to live away from her father’s home and who has deliberately flouted her parents’ directions can be required to reimburse the St. Lawrence County Department of Social Services for support. It is the decision of this court that in this case the father is relieved from his obligation of support.
The facts of this case are as follows: Anna graduated from school in March of 1972. She then worked at Ames Department Store from March until July of 1972. She apparently was unemployed until December of 1972 when she left her father’s home to live in North Carolina to be near a boyfriend who was stationed at a Marine base in that State. At that time, she babysat for relatives of her boyfriend and supported herself.
In July of 1973, her parents sent her money to visit home. She did not return to North Carolina. Instead she worked at the Newell Manufacturing Company for one week. In September of 1973, she became pregnant apparently by one Charles Mashaw, who had previously been committed to a correctional facility of the State of New York. (The court is advised that the day after the hearing in this case, he was again committed to a correctional facility for a term of one to three years.)
Anna apparently lived at home without working until January of 1974 when she commenced work at the Diamond National Plant in Ogdensburg, Newv York. At that time, she was staying at home part of the time and lived with her boyfriend part of the time. She was laid off from her employment on the 27th of February, 1974. In March of 1974, she left her parents home permanently and applied for public assistance. She gave birth to her boyfriend’s child on June 19, 1974. Both the father and the mother have continuously objected to the behavior of this young woman, particularly her relationship with Charles Mashaw. There is an indication that he was a user of drugs and in fact he was convicted of attempted criminal possession of a controlled substance in the sixth degree on April 4, 1975. Furthermore, her parents have indicated that if she would terminate her relationship with Mr. Mashaw and return with her child to their home, then they would gladly provide her with necessary support and *128 care for her infant child as well. This she has adamently declined to do.
The petitioner argues that under section 415 of the Family Court Act and section 101 of the Social Services Law the parents of a child in need of public assistance is required to provide support regardless of emancipation or conduct inimicable to the wishes of the parent. The petitioner relies upon the principles set forth in Matter of Campas v Campas (61 Misc 2d 49), which requires a husband to contribute towards the support of a wife on public assistance even though the wife has committed adultery or misconduct. (Also, see, Matter of Mercer v Mercer, 26 AD2d 450; Matter of Woods v Simpson, 59 Misc 2d 1044; but, cf., Hotetz v Hotetz, 60 Misc 2d 271 and Matter of Miller v Miller, 64 Misc 2d 341.)
Recently, the Attorney-General has supported the position of the petitioner by an informal opinion dated April 15, 1975 in which he concludes that the parents of a married child under 21 years of age are responsible for the support of the child if the child is receiving public - assistance. The Attorney-General cites Matter of McManus v Lollar (36 Misc 2d 1046).
In that case, the Supreme Court in Nassau County construed section 101 of the Social Welfare Law as imposing the burden of support upon the parent if the child is in need of public assistance for the reason that the obligation of support "is not made dependant by the statutes on a showing that an amicable relationship existed between parents and child, or that the child was unemancipated” (p 1047, supra). This is the same rationale applied in the Campus case (supra).
It is impossible to reconcile this decision with any equitable principles of justice. It seems incomprehensible that a parent should be required to contribute toward the support of a child where the child commits acts in total derogation of the relationship of parent and child regardless of whether the proceeding is commenced by a social service official or the errant child.
It is established that emancipation exempts a father from contributing towards the support of a child absent the issue of public assistance. (Shapiro v Arnold, 47 AD2d 686). It is now established that a father is exempted from contributing to the support of a minor of employable age who deliberately flouts the legitimate mandates of the parent, absent the issue of public assistance. (Matter of Roe v Doe, 29 NY2d 188.) However, an examination of section 413 of the Family Court Act *129 and section 240 of the Domestic Relations Law does not reveal any authority for either exception to the statutory obligation of child support. It appears that the rationale of the cases is that the exemption is grounded in the common law. It does not seem that section 415 of the Family Court Act or section 101 of the Social Services Law should be interpreted differently. The essential wording is identical. Indeed, if section 415 of the Family Court Act and section 101 of the Social Services Law are to be literally construed ("Kinsey” v "Kinsey”, 200 Misc 760), then it would seem that the statute would not abrogate the parents right to claim emancipation (or under Roe v Doe, supra, the flouting of parental authority) without explicit statutory direction.
It is on this point that this court disagrees with the reasoning of Matter of McManus v Lollar (63 Misc 2d 1046, supra). There it is held that absent words of exemption, the husband must be required to pay. It would rather seem that since the exemption exists apart from the statute, it would apply unless the statute explicitly states otherwise. (McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 153, 301.)
Furthermore, this analysis seems to make more practical sense. It is difficult to justify in this case requiring a father to pay support for a daughter who has flouted parental direction, who by reason thereof has born the illegitimate child of a convicted criminal, who is therefore unable to work as she had previously and who prefers to maintain a separate residence with the help of public assistance rather than return to the family home with her child as requested. For the foregoing reasons, the petition is dismissed.